# EXHIBIT 6

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA, CIVIL DIVISION

STEPHEN BROOKS,

        Plaintiff,

vs.

SAFECO INSURANCE COMPANY OF ILLINOIS, a foreign, for-profit company, and SAFECO INSURANCE COMPANY OF AMERICA, a foreign, for-profit company,

        Defendants.

_____/

CASE NO.:  18-CA-003133

DIVISION:    F

### AMENDED COMPLAINT

COMES NOW the Plaintiff, STEPHEN BROOKS, by and through his undersigned counsel, and hereby sues the Defendants, SAFECO INSURANCE COMPANY OF ILLINOIS, a foreign, for-profit company, and SAFECO INSURANCE COMPANY OF AMERICA, a foreign, for-profit company, and alleges as follows:

### GENERAL ALLEGATIONS

1.    This is an action for damages in excess of FIFTEEN THOUSAND ($15,000.00) DOLLARS, exclusive of costs and interest and is within the monetary jurisdiction of this Court.

2.    Defendant SAFECO INSURANCE COMPANY OF ILLINOIS (hereinafter referred to as "SAFECO I"), was and is a foreign, for-profit corporation, authorized to do business in the State of Florida and providing automobile insurance coverage in Hillsborough County, Florida, with its resident agent being the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, The Capitol, Tallahassee, Florida.



3.     At all times material hereto, the Plaintiff, STEPHEN BROOKS, was insured under a policy of automobile liability insurance issued by Defendant SAFECO I, which was in full force and effect at the time of the automobile collision alleged herein, and which provided automobile bodily injury coverage, personal injury protection and uninsured/underinsured motorist benefits to the Plaintiff, specifically insuring Plaintiff's 2005 Jeep Grand Cherokee 4-door station wagon. A copy of said policy is attached hereto and identified as Exhibit **"A."**

4,     Defendant SAFECO INSURANCE COMPANY OF AMERICA (hereinafter referred to as "SAFECO II"), was and is a foreign, for-profit corporation, authorized to do business in the State of Florida and providing automobile insurance coverage in Hillsborough County, Florida, with its resident agent being the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, The Capitol, Tallahassee, Florida.

5.     At all times material hereto, Plaintiff STEPHEN BROOKS (hereinafter "Mr Brooks") was insured under a Florida Personal Umbrella Policy issued by Defendant SAFECO II, which was in full force and effect at the time of the automobile collision alleged herein, and which provided excess automobile bodily injury coverage and excess uninsured/underinsured motorist benefits to the Plaintiff, specifically insuring Plaintiff's 2005 Jeep Grand Cherokee 4-door station wagon.  A copy of said policy is attached hereto and identified as Exhibit **"B."**

6.     On or about May 18, 2016, Christine Johnson (hereinafter "Ms. Johnson") was the owner and operator a 2005 Ford Expedition, travelling southbound on Highway U.S. 19, at the exit to Ulmerton Road, in Pinellas County, Florida.

7.     On or about 4:20 p.m. on May 18, 2016, Ms. Johnson negligently and/or carelessly operated or maintained her Ford Expedition, so that it collided with the rear of Mr. Brooks' 2005 Jeep Grand Cherokee 4-door station wagon.

8.     At the time of the collision, Ms. Johnson carried a policy of automobile liability insurance, issued by Direct General Insurance Company, which provided only property damage coverage and did not provide any coverage for bodily injury. An Affidavit of Liability Insurance Coverages by the representative of Direct General Insurance Company is attached hereto and identified as Exhibit **"C."**

9.     As a result of the May 18, 2016 collision, which was caused by the negligence of the uninsured driver, Ms. Johnson, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of a previously-existing condition.  These injuries and losses are either permanent or continuing, and Mr. Brooks will suffer these injuries and losses in the future.

10.     As a further result of the May 18, 2016 collision, caused by the negligence of the uninsured driver, Mr. Brooks' automobile was damaged and required extensive repairs, and he lost the use of it during the period required for its repair or replacement.

11.     The Plaintiff previously presented an underinsured motorist claim to Defendant SAFECO I and has met all conditions precedent to maintaining this uninsured motorist claim.

12.     Defendant SAFECO I refused to pay benefits the Plaintiff is legally entitled to recover under the terms and provisions of the uninsured/underinsured motorist coverage of the aforementioned policy and has forced the Plaintiff to retain The Fernandez Firm and proceed in Circuit Court to resolve this civil action by judgment.

13.     Plaintiff's injuries, losses and damages exceed the available limits of the uninsured/underinsured motorist coverage provided in the policy issued by SAFECO I and, accordingly, Plaintiff is entitled to maintain this action for excess uninsured/underinsured motorist benefits provided in the policy issued by SAFECO II.

WHEREFORE the Plaintiff, STEVEN BROOKS, hereby demands a trial by jury of all issues triable as a right by jury and further demands judgment for compensatory damages against the Defendants, SAFECO INSURANCE COMPANY OF ILLINOIS, and SAFECO INSURANCE COMPANY OF AMERICA, in an amount within the jurisdiction limits of this court, to-wit: in excess of FIFTEEN THOUSAND DOLLARS, together with costs and interest, and for such and other further relief to which the Plaintiff may be justly entitled.

JENNIFER GENTRY-FERNANDEZ
Florida Bar No.: 0002178
FRANK F. FERNANDEZ, III, ESQUIRE
Florida Bar No.: 0998508
THE FERNANDEZ FIRM
2503 W. Swann Avenue
Tampa, FL 33609
Telephone: (813) 228-6313
Facsimile: (813) 228-6323
Attorneys for Plaintiff

**Safeco Insurance**™
A Liberty Mutual Company

**POLICY NUMBER: F2663023**

## SAFECO INSURANCE COMPANY OF ILLINOIS
## AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
STEPHEN W BROOKS
MARGRETTA H BROOKS
2303 W BRISTOL AVE
TAMPA FL  33609-4703

**RENEWAL**

**POLICY PERIOD FROM:** MAR. 28 2016
**TO:** MAR. 28 2017

at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
RIP WEACHTER INS AGENCY, INC
INSURANCE INTERMEDIARIES INC
4311 W El PRADO BLVD
TAMPA       FL  33629-8404

**AGENT TELEPHONE:**
1-813-831-8889

| RATED DRIVERS | STEPHEN W BROOKS, MARGRETTA H BROOKS | | |
|---|---|---|---|
| 2001 FORD | MUSTANG GT | 2 DOOR CONVERTIBLE | ID# 1FAFP45X61F242301 |
| 2012 KIA | SEDONA LX | 4 DOOR VAN | ID# KNDMG4C76C6496534 |

Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.

| COVERAGES | 2001 FORD LIMITS | PREMIUM | 2012 KIA LIMITS | PREMIUM |
|---|---|---|---|---|
| **LIABILITY:** BODILY INJURY | $250,000 Each Person $500,000 Each Occurrence | $ 296.20 | $250,000 Each Person $500,000 Each Occurrence | $ 314.70 |
| PROPERTY DAMAGE | $100,000 Each Occurrence | 89.10 | $100,000 Each Occurrence | 105.20 |
| PERSONAL INJURY PROTECTION | | 103.40 | | 120.00 |
| UNINSURED MOTORISTS (NON-STACKED LIMITS): BODILY INJURY | $250,000 Each Person $500,000 Each Accident | 165.50 | $250,000 Each Person $500,000 Each Accident | 198.60 |
| COMPREHENSIVE | Actual Cash Value Less $1000 Deductible | 50.60 | Actual Cash Value Less $1000 Deductible | 112.70 |
| COLLISION | Actual Cash Value Less $1000 Deductible Diminishing Ded $700 | 93.40 | Actual Cash Value Less $1000 Deductible Diminishing Ded $700 | 132.00 |
| **ADDITIONAL COVERAGES:** SAFECO OPTIMUM PACKAGE | | 18.70 | | 26.40 |
| LOSS OF USE | $50 Per Day/$1500 Max | 7.50 | $50 Per Day/$1500 Max | 14.60 |
| ROADSIDE ASSIST | | 7.40 | | 6.30 |
| | TOTAL $ | 831.80 | TOTAL $ | 1,030.50 |



-CONTINUED-
P O BOX 515097, LOS ANGELES, CA 90051

SA-1897/EP 8/90

DATE PREPARED: FEB. 14 2016



**A Liberty Mutual Company**

**POLICY NUMBER:  F2663023**

# SAFECO INSURANCE COMPANY OF ILLINOIS
# AUTOMOBILE POLICY DECLARATIONS
## (CONTINUED)

**NAMED INSURED:**
STEPHEN W BROOKS
MARGRETTA M BROOKS
2303 W BRISTOL AVE
TAMPA FL  33609-4703

**RENEWAL**

**POLICY PERIOD FROM:**  MAR. 28 2016
**TO:**  MAR. 28 2017
at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
RIP WEACHTER INS AGENCY INC
INSURANCE INTERMEDIARIES INC
4311 W EL PRADO BLVD
TAMPA          FL  33629-8404

**AGENT TELEPHONE:**
1-813-831-8889

---

| RATED DRIVERS | STEPHEN W BROOKS, MARGRETTA H BROOKS |
|---|---|

**2005 JEEP**      GRAND CHEROKEE LM 4 DOOR STATION WAGON      ID# 1J8HR58NX5C664780

Insurance is afforded only for the coverages for which limits of liability or
premium charges are indicated.

| COVERAGES: | 2005 JEEP LIMITS | PREMIUMS |
|---|---|---|
| **LIABILITY:**<br>BODILY INJURY | $250,000 Each Person<br>$500,000 Each Occurrence | $  407.30 |
| PROPERTY DAMAGE | $100,000 Each Occurrence | 143.40 |
| PERSONAL INJURY PROTECTION | | 110.10 |
| **UNINSURED MOTORISTS (NON-STACKED LIMITS):**<br>BODILY INJURY | $250,000 Each Person<br>$500,000 Each Accident | 195.40 |
| COMPREHENSIVE | Actual Cash Value<br>Less $1000 Deductible | 71.50 |
| COLLISION | Actual Cash Value<br>Less $1000 Deductible<br>Diminishing Ded $700 | 109.40 |
| **ADDITIONAL COVERAGES:**<br>SAFECO OPTIMUM PACKAGE<br>LOSS OF USE<br>ROADSIDE ASSISTANCE PACKAGE | <br><br>$50 Per Day/$1500 Max | 21.90<br>8.80<br>8.20 |
| | **TOTAL** | **$ 1,076.00** |

| TOTAL EACH VEHICLE: | 2001 FORD | $   831.80 |
|---|---|---|
| | 2012 KIA | 1,030.50 |
| | 2005 JEEP | 1,076.00 |

**PREMIUM SUMMARY**                                                    **PREMIUM**
  VEHICLE COVERAGES                                                   $ 2,938.30
  DISCOUNTS & SAFECO SAFETY REWARDS          You saved $1,205.80        Included
                                                                     ------------
**TOTAL 12 MONTH PREMIUM FOR ALL VEHICLES** .................................. **$ 2,938.30**

IF YOU PAY IN FULL OR USE THE 2-PAY PLAN THE PREMIUM WILL BE REDUCED TO  $ 2,698.60x
  xThis includes the available $239.70 billing plan discount.
**CONTINUED**

P O BOX 515097, LOS ANGELES, CA 90051



A Liberty Mutual Company

**POLICY NUMBER:  F2663023**

### SAFECO INSURANCE COMPANY OF ILLINOIS
### AUTOMOBILE POLICY DECLARATIONS
(CONTINUED)

YOU SAVED $1,205.80 BY QUALIFYING FOR THE FOLLOWING DISCOUNTS:
    Anti-Theft
    Advance Quoting
    Low Mileage
    Accident Free
    Violation Free
    Coverage
    Homeowners
    Multi-Car
    Both Side Air Bag
    Anti-Lock Brakes



**Safeco Insurance™**
A Liberty Mutual Company

## FLORIDA PERSONAL AUTO POLICY

SAFECO INSURANCE COMPANY OF ILLINOIS
Home Office: 2800 W. Higgins Rd., Suite 1100, Hoffman Estates, Illinois 60195

(A stock insurance company.)

## READY REFERENCE TO YOUR AUTO POLICY

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **PART A — LIABILITY COVERAGE** | 2 |
|     Insuring Agreement | |
|     Interest on Judgments | |
|     Supplementary Payments | |
|     Exclusions | |
|     Limit of Liability | |
|     Out of State Coverage | |
|     Financial Responsibility | |
|     Other Insurance | |
| **PERSONAL INJURY PROTECTION COVERAGE** | 5 |
|     Insuring Agreement | |
|     Exclusions | |
|     Limit of Liability | |
|     Other Insurance | |
| **PART B — MEDICAL PAYMENTS COVERAGE** | 11 |
|     Insuring Agreement | |
|     Exclusions | |
|     Limit of Liability | |
|     Other Insurance | |
| **PART C — UNINSURED MOTORISTS COVERAGE (STACKED OPTION)** | 12 |
|     Insuring Agreement | |
|     Definitions | |
|     Exclusions | |
|     Limit of Liability | |
|     Other Insurance | |
| **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO** | 15 |
|     Insuring Agreement | |
|     Transportation Expenses | |
|     Exclusions | |
|     Limit of Liability | |
|     Payment of Loss | |
|     No Benefit to Bailee | |
|     Other Sources of Recovery | |
|     Appraisal | |

|                                                                                      | Beginning On Page |
|--------------------------------------------------------------------------------------|:-----------------:|
| **PART E — DUTIES AFTER AN ACCIDENT OR LOSS**                                         | **19**            |
| **PART F — GENERAL PROVISIONS**                                                       | **20**            |
|     Policy Period and Territory                                   |                   |
|     Changes                                                       |                   |
|     Payment of Premium                                            |                   |
|     Fraud                                                         |                   |
|     Legal Action Against Us                                       |                   |
|     Our Right to Recover Payment                                  |                   |
|     Termination                                                   |                   |
|     Transfer of Your Interest in This Policy                      |                   |
|     Two or More Autos Insured; Two or More Auto Policies          |                   |
| **ADDITIONAL COVERAGES**                                                              | **24**            |
|     Uninsured Motorists Coverage — Non-Stacked                    |                   |
|     Extended Personal Injury Protection Coverage                  |                   |
|     Additional Personal Injury Protection Coverage                |                   |
|     Towing and Labor Costs Coverage                               |                   |
|     Loss of Use Coverage                                          |                   |
|     Safeco Optimum Package                                        |                   |

## AGREEMENT

In return for your payment of all premiums, and in reliance upon the statements in the application we agree to insure you subject to the terms, conditions and limitations of this policy. We will insure you for the coverages and limits shown on the Declarations. Your policy consists of the policy contract, Declarations and endorsements applicable to the policy.

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

    1. The "named insured" shown in the Declarations;

    2. The spouse if a resident of the same household.

B. "We," "us" and "our" refer to the Company, as shown in the Declarations providing this insurance.

C. For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

    1. Under a written agreement to that person; and

    2. For a continuous period of at least six months.

Other words and phrases are defined. They are in bold type when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is usually a resident of your household. This includes a ward or foster child who is a resident of your household.

G. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

H. "Occupying" means in; upon; or getting in, on, out or off.

I. "Property damage" means physical injury or destruction of tangible property including loss of use.

J. "Punitive or exemplary damages" include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for bodily injury or property damage.

K. "Trailer" means a vehicle designed to be pulled by a:

    1. Private passenger auto; or

    2. Pickup, van or motorhome.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in K.1. or K.2. above.

L. "Your covered auto" means:

    1. Any vehicle shown in the Declarations.

    2. a. Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to conditions for **Newly Acquired Replacement Vehicle** and **Newly Acquired Additional Vehicle** under L.2.b. below. Any newly acquired vehicle must be of the following types:

        (1) a private passenger auto;

        (2) a pickup or van that:

            (a) has a Gross Vehicle Weight Rating of 12,000 lbs or less; and

            (b) is not used for the delivery or transportation of goods and materials unless such use is:

                i. incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

                ii. for farming or ranching; or

        (3) a motorhome or trailer.

    b. A newly acquired vehicle is subject to the following conditions:

        (1) **Newly Acquired Replacement Vehicle**. If the vehicle you acquire replaces one shown in the Declarations, the replacement vehicle will have the same coverage as the vehicle it replaced, other than Part D — Coverage for Damage to Your Auto. This provision applies only if there is no other insurance policy that provides



coverage for that replacement vehicle.

Part D — Coverage for Damage to Your Auto shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition, only to the extent Part D — Coverage for Damage to Your Auto applied to the vehicle being replaced. You must notify us within thirty (30) days after you acquire the replacement vehicle for Part D — Coverage for Damage to Your Auto to continue.

(2) **Newly Acquired Additional Vehicle.** For any newly acquired vehicle that is in addition to any shown in the Declarations coverage shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition. Coverage shall be the broadest coverage we provide for any vehicle shown in the Declarations. This coverage applies only if:

(a) you acquire the additional vehicle during the policy period shown on the Declarations; and

(b) there is no other insurance policy that provides coverage for the additional vehicle.

If you wish to add or continue coverage you must ask us to insure the additional vehicle within thirty (30) days after you acquire the additional vehicle. This thirty (30) days of coverage includes the day you acquire the vehicle.

(3) Collision Coverage for a newly acquired vehicle begins on the

date that you acquire the vehicle. However, if the Declarations does not indicate that Collision Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 collision deductible will apply.

(4) Comprehensive Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Comprehensive Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 comprehensive deductible will apply.

c. any trailer you own.

3. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction.

This provision (L.3.) does not apply to Coverage for Damage to Your Auto.

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or

**property damage** not covered under this policy.

B. "Insured" as used in this Part A — Liability Coverage means:

1. **You** or any **family member** for the ownership, maintenance or use of any auto or trailer.

2. Any person using **your covered auto** with your express or implied permission.

3. For **your covered auto**, any person or organization but only with respect to

legal responsibility for acts or omissions of a person for whom coverage is afforded under **B.1.** and **B.2.** above.

4. For any auto or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part A — Liability Coverage. This provision **(B.4.)** applies only if the person or organization does not own or hire the auto or trailer.

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an **insured**:

1. Up to $1,000 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

6. All expenses incurred by an **insured** for first aid to others at the time of the accident, but not to exceed $10,000.

## EXCLUSIONS

A. We do not provide Liability Coverage for:

1. Any **insured** who intentionally causes **bodily injury** or **property damage** even if such **bodily injury** or **property damage** is of a different kind or degree than expected or intended, or such **bodily injury** or **property damage** is sustained by a different person or persons than expected or intended.

2. **Property damage** to property owned or being transported by any **insured**.

3. **Property damage** to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that **insured**.

This exclusion **(A.3.)** does not apply to **property damage** to a residence or private garage.

4. **Bodily injury** to an employee of any **insured** during the course of employment. This exclusion **(A.4.)** does not apply to **bodily injury** to a domestic employee unless workers compensation benefits are required or available for that domestic employee.

5. Any **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion **(A.5.)** does not apply to a share-the-expense car pool.

6. Any **insured** using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

7. a. Any **insured** while employed or otherwise engaged in the **business** of:

      (1) selling;

      (2) repairing;

      (3) servicing;

      (4) storing; or

      (5) parking;

      vehicles designed for use mainly on public highways. This includes road testing and delivery.

   b. This exclusion **(A.7.)** does not apply to the ownership, maintenance or use of **your covered auto** by:

      (1) you;

      (2) any **family member**; or

      (3) any partner, agent or employee of you or any **family member**.

8. Any **insured** maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in exclusions **A.6.** or **A.7.** This exclusion **(A.8.)** does not apply to the maintenance or use of a:

   a. private passenger auto;

   b. pickup, motorhome or van that:

      (1) you own; or

      (2) you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

         (a) breakdown;

(b) repair;

(c) servicing;

(d) loss; or

(e) destruction; or

c. trailer used with a vehicle described in A.8.a. or A.8.b. above.

9. Any Insured using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to a family member using your covered auto.

10. a. Bodily Injury or property damage for which any Insured:

(1) is an Insured under a nuclear energy liability policy; or

(2) would be an Insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

b. A nuclear energy liability policy is a policy issued by any of the following or their successors:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters; or

(3) Nuclear Insurance Association of Canada.

11. Punitive or exemplary damages awarded against any Insured.

12. Bodily Injury to you or any family member.

13. Bodily Injury or property damage arising out of the use of your covered auto while leased or rented to others. However, this exclusion does not apply to the operation of your covered auto by you or a family member.

14. Bodily Injury or property damage arising out of a criminal act or omission of the Insured. However, this exclusion (14.) does not apply to traffic violations.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. a. Any vehicle which:

(1) has fewer than four wheels;

(2) is designed mainly for use off public roads; or

(3) is a vehicle not licensed for use on public roads.

b. This exclusion does not apply:

(1) while such vehicle is being used by an Insured in a medical emergency; or

(2) to any trailer; or

(3) to any non-owned golf carts.

2. Any vehicle, other than your covered auto, which is:

a. owned by you; or

b. furnished or available for your regular use.

3. a. Any vehicle, other than your covered auto, which is:

(1) owned by any family member; or other person who resides with you; or

(2) furnished or available for the regular use of any family member or other person who resides with you.

b. However, this exclusion (B.3.) does not apply to you while you are maintaining or occupying any vehicle which is:

(1) owned by a family member or other person who resides with you; or

(2) furnished or available for the regular use of a family member or other person who resides with you.

4. Any vehicle operated by an Insured while it is:

a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

(1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition; or

b. participating in a high performance driving or racing instruction course or school.

This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

LIMIT OF LIABILITY

A. If the Declarations indicates "per person/per accident" coverage applies:

The limit of liability as shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of

consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all property damage resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. If the Declarations indicate Combined Single Limit applies, Paragraph A. above is replaced by the following:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for **bodily injury** and **property damage** liability. However, this provision will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss

under this coverage and Part B — Medical Payment Coverage or any Uninsured Motorists Coverage of this policy.

D. A vehicle and attached trailer are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached trailer.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

---

## PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

A. We will pay in accordance with the Florida Motor Vehicle No-Fault Law as amended, personal injury protection benefits to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

1. You or any **family member** while occupying a **motor vehicle** or, while a pedestrian, through being struck by a **motor vehicle**; or

2. Any other person while **occupying your covered auto** or, while a pedestrian, through being struck by **your covered auto**.

B. Personal injury protection benefits consist of:

1. **Medical Benefits.** 80% of reasonable expenses as listed in the schedule under the Florida Motor Vehicle No-Fault Law, §627.736(5)(a) for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services including prosthetic devices, and **medically necessary** ambulance, hospital, and nursing services

if the individual receives initial services and care within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

a.   Initial services and care that are lawfully provided, supervised, ordered or prescribed by a physician licensed under Florida statutes or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under Florida statutes which provides emergency transportation and treatment.

b.   Upon referral by a provider described in 1.a. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to 1.a. above which may be provided, supervised, ordered, or prescribed only by a physician, chiropractic physician or dentist licensed under Florida statutes to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida statutes. Follow-up services and care may also be provided by any of the following persons or entities:

(1)   a hospital or ambulatory surgical center licensed under Florida statutes.

(2)   an entity wholly owned by one or more physicians, chiropractic physicians or dentists licensed under Florida statutes or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

(3)   an entity that owns or is wholly owned, directly or indirectly, by a hospital.

(4)   a physical therapist licensed under Florida statutes based upon a referral by a provider described in this 1.b. provision.

(5)   an accredited and licensed health care clinic as prescribed by Florida statutes.

c.   reimbursement for services and care provided in 1.a. or 1.b. above, up to $10,000 if a physician, dentist, physician assistant or an advanced registered nurse practitioner licensed under Florida statutes has determined that the injured person had an emergency medical condition.

d.   reimbursement for services and care provided in 1.a. or 1.b. is limited to $2,500 if any provider listed in 1.a. or 1.b. determines that the injured person did not have an emergency medical condition.

e.   **medical benefits** do not include massage as defined in Florida statutes, §480.033 or acupuncture as defined in Florida statutes, §457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

**Medical benefits** shall only be reimbursed up to 80% of the schedule of maximum charges listed in the Florida Motor Vehicle No-Fault Law §627.736(5)(a), Florida Statutes for such services and care that are lawfully provided, supervised, ordered or prescribed by a healthcare provider or facility authorized under Florida's Motor Vehicle No-Fault Law.

2.   **Disability.** With respect to the period of disability of an **insured**, 60% of any loss of gross income and earning capacity from that **insured's** inability to work due to **bodily injury**. However, **disability** does not include any loss after an **insured's** death.

3.   **Replacement Services.** With respect to the period of disability of an **insured**, all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the **insured** would have performed, without income, for the benefit of the **insured's** household had the **insured** not sustained **bodily injury**.

4.   **Accidental Death.** A death benefit.

C.   **DEFINITIONS APPLICABLE TO THIS COVERAGE**

1.   For purposes of this coverage, a **motor vehicle** shall be deemed to be owned by a person if that person:

a.   holds the legal title to such vehicle.

b.   is a debtor having the right to possession, if such vehicle is the subject of a security agreement.

**c.** is a lessee having the right to possession, if such vehicle is the subject of a lease which:

    **(1)** has an option to purchase; and

    **(2)** is for a period of at least 6 months.

**d.** is a lessee having the right to possession, if such vehicle is the subject of a lease which:

    **(1)** does not have an option to purchase;

    **(2)** is for a period of at least 6 months; and

    **(3)** requires the lessee to secure insurance.

**2.** **"Emergency medical condition"** in this coverage means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

**a.** serious jeopardy to patient health.

**b.** serious impairment to bodily functions.

**c.** serious dysfunction of any body organ or part.

**3.** **"Insured"** in this coverage means:

**a.** You or any **family member** while:

    **(1)** occupying; or

    **(2)** a pedestrian struck by;

    a motor vehicle.

**b.** Any other person while:

    **(1)** occupying; or

    **(2)** a pedestrian struck by;

    your covered auto.

**4.** **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

**a.** in accordance with the generally accepted standards of medical practice;

**b.** clinically appropriate in terms of type, frequency, extent, site and duration; and

**c.** not primarily for the convenience of the patient, physician or other health care provider.

**5.** **"Motor vehicle"** means:

**a.** any self-propelled vehicle with four or more wheels which is:

    **(1)** designed; and

    **(2)** required to be licensed;

    for use on Florida highways.

**b.** any trailer or semitrailer designed for use with such vehicle.

However, **"motor vehicle"** does not include:

**a.** any motor vehicle which is:

    **(1)** used in mass transit other than public school transportation;

    **(2)** designed to transport more than five passengers (excluding the operator); and

    **(3)** owned by a:

        **(a)** municipality;

        **(b)** transit authority; or

        **(c)** political subdivision of the state.

**b.** a mobile home.

**6.** **"Occupying"** means:

**a.** in or upon;

**b.** entering into; or

**c.** alighting from.

**7.** **"Pedestrian"** means a person who is not occupying a self-propelled vehicle.

**8.** **"Your covered auto"** means a **motor vehicle** owned by you and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law as amended and either:

**a.** a premium is charged; or

**b.** it is a **trailer**, other than a mobile home, designed for use with a **motor vehicle**.

## EXCLUSIONS

**A.** We do not provide Personal Injury Protection Coverage for any **insured**:

**1.** While operating **your covered auto** without your express or implied consent.

**2.** If that **insured's** conduct contributed to his/her **bodily injury** under any of the following circumstances:

**a.** intentionally causing **bodily injury** to himself/herself; or

**b.** while committing a felony.

**3.** Other than you, if that **insured** owns a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law as amended.

4. Other than you or any **family member**, who is entitled to personal injury protection benefits from a person who owns a **motor vehicle** which is not a vehicle covered under this policy, or from that vehicle's owner's policy.

5. Who sustains **bodily injury** while occupying a **motor vehicle** located for use as a residence or premises.

B. We do not provide Personal Injury Protection Coverage for:

1. **You** or any **family member** while occupying a **motor vehicle** which is:

   a. owned by **you**; and

   b. not a **your covered auto** under this policy.

2. Any **pedestrian**, other than **you** or any **family member** who is not a legal resident of Florida.

3. Any person operating **your covered auto** without your express or implied consent.

## PAYMENT OF LOSS

We may pay the insured or any person or organization providing the medical services, supplies or care.

## LIMIT OF LIABILITY

A. Regardless of the number of:

1. **Insureds**;

2. Policies or bonds applicable;

3. Vehicles involved; or

4. Claims made;

   the total aggregate limit of liability for all personal injury protection benefits available, to or for each **insured** injured in any one accident, from all sources combined, including this policy shall be $10,000.

B. Any amount payable under Personal Injury Protection Coverage shall be reduced by any amounts paid or payable for the same elements of loss under any workers compensation laws.

C. Any coverage provided under any Uninsured Motorists Coverage of this policy shall be excess over any personal injury protection benefits paid or payable.

D. The amount of any deductible shown in the Declarations shall be deducted from the amount of reasonable expenses and losses as listed in the schedule under the Florida Motor Vehicle No-Fault Law §627.736(5)(a), Florida Statutes before the application of any percentage limitation, for:

1. **Medical Benefits**;

2. **Disability**; and

3. **Replacement Services**;

   for each **insured** to whom the deductible applies.

   Accidental death is not subject to a deductible.

E. Any amounts payable under Personal Injury Protection Coverage for medical benefits may be limited by the schedule of maximum charges for services, supplies and care listed in the Florida Motor Vehicle No-Fault Law §627.736(5)(a), Florida Statutes.

F. Any death benefit payable under Personal Injury Protection Coverage shall be $5,000 per person. Death benefits are in addition to the **medical benefits, disability and re**placement services provided under the policy.

## OTHER INSURANCE

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an **insured** receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an **insured** sustains **bodily injury** while:

1. **Occupying**; or

2. Struck by a motor vehicle rented or leased under a rental or lease agreement;

   the personal injury protection benefits afforded under the lessor's policy shall be primary.

   This provision (B.) does not apply if the face of the rental or lease agreement contains, in at least 10-point type, the following language:

   The valid and collectible personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of personal injury protection coverage required by §324.021(7) and §627.736 Florida Statutes.

## GENERAL PROVISIONS APPLICABLE TO THIS COVERAGE ONLY

## POLICY TERRITORY

The policy territory is:

1. Florida.

2. The United States of America, its territories or possessions or Canada.

   This provision applies only to:

   a. **you** or any **family member** while occupying **your covered auto**; or

   b. **you** while occupying a **motor vehicle**:

      (1) owned by any **family member**; and

(2) for which security is maintained as required by the Florida Motor Vehicle No-Fault Law as amended.

## FRAUD

We do not provide Personal Injury Protection Coverage for an insured if that insured has committed, by a material act or omission, any insurance fraud relating to Personal Injury Protection Coverage under this policy, and if the fraud is:

1. Admitted to in a sworn statement by the **insured**; or

2. Established in a court of competent jurisdiction.

We may deny coverage to void all Personal Injury Protection Coverage arising from the claim with respect to the **insured** who committed any insurance fraud. Any benefits paid prior to the discovery of that **insured's** fraud shall be recoverable from that **insured.**

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us:

1. Until the claim for benefits is overdue in accordance with the provisions of Payment of Benefits, paragraph 1.; and

2. Until a demand letter is provided to us in accordance with the requirements of the Florida Motor Vehicle No-Fault Law, §627.736, Florida Statutes; and

3. With respect to the overdue claim specified in the demand letter, if we have:

   a. paid the overdue claim; or

   b. agreed to pay for future treatment not yet rendered;

   within 30 days from the date of receipt of the demand letter by us, in accordance with the requirements of the Florida Motor Vehicle No-Fault Law, §627.736, Florida Statutes.

   The demand letter shall be mailed to us by U.S. certified mail or registered mail, return receipt requested.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured.**

C. If legal action is brought against us, all claims related to the same health care provider for the same **insured** shall be brought in one action, unless good cause is shown why such claims should be brought separately.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under Personal Injury Protection Coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

1. Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and

2. Do nothing after loss to prejudice these rights.

B. If we make a payment under Personal Injury Protection Coverage and the person to or for whom payment was made sustained **bodily injury** while:

1. **Occupying;** or

2. A pedestrian struck by;

   a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law as amended, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

The following provisions are added:

## PAYMENT OF BENEFITS

1. Benefits payable under Personal Injury Protection Coverage may be overdue if not paid within 30 days after written notice of loss and the amount of loss have been filed with us in accordance with the provisions of the Florida Motor Vehicle No-Fault Law as amended.

2. We may, at our option, pay any **medical benefits** to:

   a. **insured;** or

   b. person or organization providing services or supplies for such benefits.

   However, we will not pay:

   a. a claim or charges for such benefits made by a:

      (1) broker, as defined in the Florida Motor Vehicle No-Fault Law as amended; or

      (2) person making the claim on behalf of such broker.

   b. any charge or reimbursement made by or on behalf of a clinic that is required to be licensed with the Agency For Health Care Administration:

      (1) but is not so licensed; or

      (2) that is otherwise operating in violation of the Florida Health Care Clinic Act.

   c. a claim or charges for such benefits:

      (1) for any service or treatment that was not lawful at the time rendered;

      (2) to any person who knowingly submits a false or misleading

statement relating to the claim or charges;

(3) with respect to a bill or statement that does not substantially meet the applicable requirements of FLA. STAT. SECTION §627.736(5)(d), Florida Statutes;

(4) for any service or treatment that is:

(a) upcoded; or

(b) that is unbundled when such treatment or service should be bundled;

in accordance with the provisions of the Florida Motor Vehicle No-Fault Law as amended;

(5) for any medical services or treatment billed by a physician and not provided in a hospital unless such services or treatment:

(a) are actually rendered by the physician or are incident to the physician's professional services; and

(b) are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services or treatment that were rendered and billed.

d. for any invalid diagnostic test as determined by the Florida Department of Health in accordance with the Florida Motor Vehicle No-Fault Law as amended.

e. charges for any services rendered by any person who violates the provisions of FLA. STAT. SECTION 817.234(8) in regard to the insured for whom such services were rendered and with respect to soliciting business or causing business to be solicited from any insured involved in a motor vehicle accident for the purpose of making:

(1) motor vehicle tort claims; or

(2) claims for personal injury protection benefits.

3. If a person seeking Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until, at the trial level:

a. The prosecution makes a formal entry on the record that it will not prosecute the case against that person;

b. The charge is dismissed; or

c. That person is acquitted.

## MODIFICATION OF POLICY COVERAGES

A. Any coverage provided under Part B — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be excess over our share of any personal injury protection benefits paid or payable.

B. Regardless of whether the limits for personal injury protection benefits have been exhausted any coverage provided under Part B — Medical Payments Coverage shall pay the amount of any claim for medical expenses payable under Personal Injury Protection Coverage which exceeds the 80% limitation as listed in the schedule under the Florida Motor Vehicle No-Fault Law, §627.736(5)(a), Florida Statutes for medical expenses.

C. No coverage is provided under Part B — Medical Payments Coverage for the amount of any applicable deductible under Personal Injury Protection Coverage.

## PROVISIONAL PREMIUM

A. In the event of any change in the:

1. Rules;

2. Rates;

3. Rating plan;

4. Premiums; or

5. Minimum premiums;

applicable to Personal Injury Protection Coverage, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law as amended which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under Part A — Liability Coverage, Part B — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be deemed to be provisional and subject to recomputation.

B. If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to you, in accordance with the Florida Motor Vehicle No-Fault Law as amended, with respect to insurance provided under a previous policy.

C. If the final recomputed premium exceeds the premium shown in the Declarations, you shall pay us:

1. The excess amount; and

2. The amount of any return premium previously credited or refunded.

## PART B — MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

A. We will pay usual and customary charges incurred for reasonable and necessary medical and funeral expenses because of **bodily injury**:

1. Caused by accident; and

2. Sustained by an **insured**.

We will pay only those expenses incurred for services rendered within three (3) years from the date of the accident.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

B. "**Insured**" as used in this Part B — Medical Payments Coverage means:

1. You or any **family member**:

   a. while **occupying**; or

   b. as a pedestrian or bicyclist when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while **occupying your covered auto** with your express or implied permission.

3. Any other person while **occupying**, as a guest, an automobile not owned by you or a **family member**, while being operated by you or a **family member**.

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

1. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

2. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while **occupying** any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

4. Sustained while **occupying** any vehicle located for use as a residence or premises.

5. Occurring during the course of employment if workers compensation benefits

are required or available for the **bodily injury**.

6. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by you; or

   b. furnished or available for your regular use.

7. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by any **family member** or other person who resides with you; or

   b. furnished or available for the regular use of any **family member** or other person who resides with you.

   However, this exclusion (7.) does not apply to you.

8. Sustained while **occupying** a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to a **family member** using your **covered auto**.

9. Sustained while **occupying** a vehicle when it is being used in the business of an **insured**. This exclusion (9.) does not apply to **bodily injury** sustained while **occupying** a:

   a. private passenger auto;

   b. pickup, van or motorhome that you own; or

   c. trailer used with a vehicle described in a. or b. above.

10. Caused by or as a consequence of:

    a. discharge of a nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

12. Sustained while occupying any vehicle operated by the insured while it is:

    a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1) race activity; or

        (2) speed, performance, stunt, or demolition contest or exhibition; or

    b. participating in a high performance driving or racing instruction course or school.

    This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

13. Caused by the actual growth, proliferation or spread of fungi or bacteria.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this Medical Payments Coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this Medical Payments Coverage and Part A — Liability Coverage or any Uninsured Motorists Coverage of this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

Medical Payments Coverage under this policy shall be excess over medical benefits of all Personal Injury Protection Coverage available from all sources. However, this does not apply to the 20% of the medical benefits that are not paid under Personal Injury Protection Coverage because of the 80% limitation.

---

## PART C — UNINSURED MOTORISTS COVERAGE (STACKED OPTION)

### INSURING AGREEMENT

We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. Sustained by that insured; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

### DEFINITIONS

A. "Insured" as used in this Part C — Uninsured Motorists Coverage means:

1. You or any family member.

2. Any rated driver shown on the Declarations other than you or a family member.

3. Any other person occupying your covered auto with your express or implied permission.

4. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

B. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for bodily injury under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:

    a. you, any family member or any other rated driver listed on the Declarations;

    b. a vehicle which you, any family member or any other rated driver listed on the Declarations are occupying; or

**c.    your covered auto.**

If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4.    To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   **a.**    denies coverage; or

   **b.**    is or becomes insolvent.

However, **uninsured motor vehicle** does not include any vehicle or equipment:

1.    Owned by or furnished, or available for the regular use of **you** or any **family member** unless it is a **your covered auto** to which Part A of the policy applies and liability coverage is excluded for any person other than **you** or any **family member** for damages sustained in the accident by **you** or any **family member**

2.    Owned by any governmental unit or agency.

3.    Operated on rails or crawler treads.

4.    Designed mainly for use off public roads while not on public roads.

5.    While located for use as a residence or premises.

**EXCLUSIONS**

A.    We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1.    If that **insured** or the legal representative settles the **bodily injury** claim without our consent. However, this exclusion (A.1.) does not apply:

   **a.**    if such settlement does not prejudice our right to recover payment; or

   **b.**    to a settlement made with the insurer of a vehicle described in section 2. of the definition of uninsured motor vehicle.

2.    While occupying **your covered auto** when it is being used as a public or livery conveyance. This exclusion (A.2.) does not apply to a share-the-expense car pool.

3.    While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

4.    While using a vehicle without the express or implied permission of the owner or other person having lawful possession.

However, this exclusion does not apply to **you**, any **family member** or any other rated driver listed on the Declarations using **your covered auto**.

5.    With respect to damages for pain, suffering, mental anguish or inconvenience unless the **bodily injury** consists in whole or in part of:

   **a.**    significant and permanent loss of an important bodily function;

   **b.**    permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

   **c.**    significant and permanent scarring or disfigurement; or

   **d.**    death.

B.    This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1.    Workers compensation law; or

2.    Disability benefits law.

C.    We do not provide Uninsured Motorists Coverage for **punitive or exemplary damages.**

**LIMIT OF LIABILITY**

A.    Our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident is the sum of the limits of liability shown in the Declarations for "each person."

Subject to this limit for "each person," our maximum limit of liability for all damages arising out of **bodily injury** resulting from any one accident is the sum of the limits of liability shown in the Declarations for "each accident."

This is the most we will pay regardless of the number of:

1.    **insureds;**

2.    Claims made;

3.    Vehicles or premiums shown in the Declarations; or

4.    Vehicles involved in the accident.

However, no one will be entitled to receive duplicate payments for the same elements of loss as a result of the application of this provision.

B.    No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1.    Part A — Liability Coverage of this policy;

2.    No-fault coverage; or

3.    Automobile medical payments coverage.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers compensation law; or

2. Disability benefits law.

E. With respect to coverage under Paragraph 2. of the definition of **uninsured motor vehicle**, we will reduce the **insured's** total damages by any amount available to that **insured**, under any bodily injury liability bonds or policies applicable to the **uninsured motor vehicles**, that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **uninsured motor vehicle**. However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

This Paragraph (E.) shall not apply if we advance payment to the **insured** in an amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle**.

F. A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

G. If Combined Single Limit Uninsured Motorists Coverage applies, Paragraphs A. of the Limit of Liability Provision for Uninsured Motorists Coverage is replaced by the following:

The maximum limit of our liability for Uninsured Motorists Coverage in any one accident is the sum of the Uninsured Motorists Coverage limits shown in the Declarations applicable to each vehicle. This is the most we will pay regardless of the number of:

1. **insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**ARBITRATION**

A. If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **uninsured motor vehicle** then the matter may be:

1. Mediated, in accordance with the Mediation provision contained in Part F — General Provisions of the policy, if the damages resulting from **bodily injury** are for $10,000 or less; or

2. Arbitrated. However, disputes concerning coverage under this Part C — Uninsured Motorists Coverage may not be arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

B. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the **insured** is legally entitled to recover damages; and

2. The amount of damages.

**FLORIDA ARBITRATION CODE**

If we and an **insured** agree to arbitration, the Florida Arbitration Code will not apply.

**ADDITIONAL DUTIES**

A person seeking Uninsured Motorists Coverage under section 2. of the definition of **uninsured motor vehicle** must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the uninsured motor vehicle and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle.

**GENERAL PROVISIONS**

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage STACKED OPTION.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage STACKED OPTION.

---

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including its equipment, any child safety seat in use in **your covered auto** or **non-owned auto**, minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

### Deductible

Unless stated otherwise, the applicable deductible shown in the Declarations shall be applied to each accidental loss covered under Part D — Coverage for Damage to Your Auto of the policy. However,

a. if loss to more than one of **your covered autos** or a **non-owned auto** results from the same loss, only the highest applicable deductible will apply;

b. In the event of a **collision** with another vehicle insured by:

(1) a Safeco insurance company; or

(2) another Liberty Mutual Agency Corporation company;

no deductible will apply.

This does not include a vehicle described as **your covered auto** or **non-owned auto**.

c. We will pay under Comprehensive Coverage for the cost of repairing or replacing the damaged windshield on **your covered auto** or a **non-owned auto** without a deductible. We will pay only if the Declarations indicates that Comprehensive Coverage applies.

B. "**Collision**" means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object.

"**Comprehensive**" means loss, other than collision, to **your covered auto** or a **non-owned auto**. Losses caused by the following are not collision losses but are comprehensive losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision**, you may elect to have it considered a loss caused by collision.

C. 1. "**Non-owned auto**" means:

a. Any private passenger auto, pickup, van (other than a cargo van) or trailer with a Gross Vehicle Weight Rating of 12,000 pounds or less or any cargo van or moving van with a Gross Vehicle Weight Rating of 18,000 pounds or less, not owned by or furnished or available for the regular use of **you** or any **family member** while in the custody of or being operated by **you** or any **family member**; or

b. Any auto or trailer **you** do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

(1) breakdown;

(2) repair;

(3) servicing;

(4) loss; or

(5) destruction.

2. "**Non-owned auto**" does not include any vehicle which has been operated or rented by or in the possession of **you** or any **family member** for 30 or more consecutive days. This does not apply to a temporary substitute vehicle authorized by **us**.

SA-1852/FLEP 1/13                   - 15 -

D. "Camper body" means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

E. "Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

## TRANSPORTATION EXPENSES

A. Subject to the limitations described in paragraphs B. and C., below, we will pay:

1. Temporary transportation expenses incurred by you in the event of the total theft of your covered auto or a non-owned auto. We will pay for such expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto. We will pay only expenses incurred during the period:

   a. beginning 48 hours after the theft; and

   b. ending when your covered auto or the non-owned auto is returned to use or we pay for its loss.

2. Indirect loss expenses for which you become legally responsible in the event of a loss to a non-owned auto. We will pay only expenses beginning when the non-owned auto is withdrawn from use for more than 24 hours. We will pay for indirect loss expenses if the loss is caused by:

   a. a comprehensive loss only if the Declarations indicate that Comprehensive Coverage is provided for any your covered auto.

   b. collision only if the Declarations indicate that Collision Coverage is provided for any your covered auto.

B. For the expenses described in paragraphs A.1. and A.2. we will pay the greater of the following, without application of a deductible:

1. Up to $25 per day, to a maximum of $750; or

2. The limit for Loss of Use, if any, shown in the Declarations.

C. Our payment for the expenses described in paragraphs A.1. and A.2. will be limited to that period of time reasonably required to repair or replace the your covered auto or the non-owned auto.

## EXCLUSIONS

We will not pay for:

1. Loss to your covered auto or any non-owned auto which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Loss to your covered auto or any non-owned auto while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an insured's business.

3. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (3.) does not apply if the damage results from the total theft of your covered auto or any non-owned auto.

4. Loss due to or as a consequence of:

   a. discharge of any nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

5. Loss from or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. nuclear reaction;

   b. radiation; or

   c. radioactive contamination.

6. Loss to:

   a. any electronic equipment designed for the production or reproduction of sound, pictures, audio, visual or data or that receives or transmits sound, pictures or data signals.

   b. This exclusion (6.) does not apply to:

      (1) equipment designed for the reproduction of sound or transmission of sound, pictures, audio, visual or data signals and accessories used with such equipment, provided:

         (a) the electronic equipment is permanently installed by the original vehicle manufacturer or manufacturer's dealership in your covered auto or any non-owned auto; or

(b) the electronic equipment is:

    I.   removable from a housing unit which is permanently installed by the original vehicle manufacturer or manufacturer's dealership in the auto;

    II.  designed to be solely operated by use of the power from the auto's electrical system; and

    III. in or upon your covered auto or any non-owned auto;

    at the time of loss.

(c) any equipment installed through our Teen Safe Driver™ program.

However, we will pay only up to a total of $1,000 or the actual cash value of your covered auto or any non-owned auto, whichever is less, for all such equipment that is not installed by the original vehicle manufacturer or manufacturer's dealership.

(2) any other electronic equipment that is:

(a) necessary for the normal operation of the auto or the monitoring of the auto's operating systems;

(b) an integral part of the same unit housing any electronic equipment described in 7.a. and permanently installed by the original vehicle manufacturer or manufacturer's dealership in your covered auto or any non-owned auto.

**7.** Loss to:

    **a.**  tapes, records, discs, or other media used with such equipment described in exclusion (6.); or

    **b.**  any other accessories, not permanently installed used with such equipment described in exclusion (6.).

**8.** Loss to your covered auto or any non-owned auto due to destruction or confiscation by governmental or civil authorities because you or any family member:

    **a.**  engaged in illegal activities; or

    **b.**  failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (8.) does not apply to the interests of Loss Payees in your covered auto.

**9.** Loss to a camper body, motorhome or trailer you own which is not shown in the Declarations. This exclusion (9.) does not apply to a camper body, motorhome or trailer you:

    **a.**  acquire during the policy period; and

    **b.**  ask us to insure during the policy period or within 30 days after you become the owner, whichever is greater.

**10.** Loss to any non-owned auto when used by you or any family member without the express or implied permission of the owner or other person having lawful possession.

**11.** Loss to equipment, whether operational or not, whose design may be used for the detection or location of law enforcement equipment.

**12.** Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in the business of:

    **a.**  selling;

    **b.**  repairing;

    **c.**  servicing;

    **d.**  storing; or

    **e.**  parking;

vehicles designed for use on public highways. This includes road testing and delivery.

**13.** Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in any business not described in exclusion 2. This exclusion (13.) does not apply to the maintenance or use by you or any family member of a non-owned auto which is a private passenger auto or trailer.

**14.** Loss to your covered auto or any non-owned auto operated by an insured while it is:

    **a.**  located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition; or

b. participating in a high performance driving or racing instruction course or school.

This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

15. Loss to, or loss of use of, a **non-owned auto** rented by:

a. **you**; or

b. any **family member**;

if a rental vehicle company is precluded from recovering such loss or loss of use, from **you** or that **family member**, pursuant to the provisions of any applicable rental agreement or state law.

16. Loss to **your covered auto** or any non-owned auto, arising out of the actual presence, growth, proliferation or spread of fungi, dry rot or bacteria.

17. Loss to **your covered auto**, **non-owned auto**, or **trailer**, for diminution in value.

18. Loss in excess of $1,000 per claim or the actual cash value of **your covered auto** or any **non-owned auto**, whichever is less, for any furnishings or equipment that were not installed by the original vehicle manufacturer or manufacturer's dealership which mechanically or structurally changes **your** vehicle and results in increase in performance or change in appearance, including but not limited to:

a. custom murals, paintings or other decals or graphics;

b. custom wheels, tachometers, pressure and temperature gauges;

c. modified or custom engines and fuel systems, light bars, racing slicks and/or oversized tires, roll bars and lift kits, winches, utility boxes, and tool boxes; or

d. non-standard paint.

This exclusion does not apply to equipment installed to make a vehicle handicap accessible.

19. Loss arising out of the use of **your covered auto** while leased or rented to others.

20. Loss to **your covered auto** or a **non-owned auto** caused by an intentional act by **you** or a **family member**, or at the direction of **you** or a **family member**.

## LIMIT OF LIABILITY

A. At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2. a. The amount necessary to repair or replace the property with other property of like kind and quality.

   b. Determination of the cost of repair or replacement will be based upon one of the following:

      (1) the cost of repair or replacement agreed upon by you and us;

      (2) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the Declarations.

However, the most we will pay for loss to any **non-owned auto**, which is a **trailer**, is $1,500.

B. An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of the loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition. When replacing parts normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. **You**; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto**;

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. Upon notice of demand for an appraisal,

the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision. The mediation must be completed before a demand for appraisal can be made.

B. In the event of an appraisal, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

C. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. Any person or organization making claim or seeking payment must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes but is not limited to recorded interviews within 20 days of our request at a reasonable location, while not in the presence of any other person or establishment making a claim or claiming benefits. The recorded interview may be recorded by audio, video, court reporter or any combination thereof.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require to physical or mental examinations within 30 days by physicians we select. We will pay for these exams. If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent medical benefits.

A. Authorize us to obtain medical reports and other pertinent records.

C. We may require any person making a claim with us to also:

1. Submit a proof of loss, under oath if requested, when required by us;

2. Submit to examinations under oath, as often as reasonably needed. The examination under oath may be recorded by audio, video, court reporter or any combination thereof. We may examine any insured separately and apart from the presence of any other insured;

3. Submit to interviews and recorded statements within 20 days without the need for us to conduct and examination under oath. The recorded interview may be recorded by audio, video or court reporter or any combination thereof.

We will require that the transcript be signed. Compliance with these requirements is a condition precedent to filing suit under the policy.

D. If there is an assignment of benefits to any entity, we may require representatives of the entity to submit to examinations under oath, as often as reasonably needed. We may examine any insured separately and apart from the presence of any other insured. We will require the transcript to be signed by the representative. We have the option to select any representative that we require to sit for

examination under oath. Compliance with these requirements is a condition precedent to filing suit under the policy.

E. A person seeking Personal Injury Protection Coverage must:

1. Promptly forward to us a copy of the:

   a. summons and complaint; or

   b. other process;

   served in connection with any legal action that the insured takes against a third party to recover damages for bodily injury.

2. Promptly give us written proof of claim, under oath if required. Such proof shall include:

   a. full details of the nature and extent of the injuries and treatment received and contemplated; and

   b. any other information which may assist us in determining the amount due and payable.

3. Submit as often as we reasonably require to mental or physical exams. We will:

   a. pay for these exams; and

   b. forward a copy of the medical report to that person if requested.

   If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent personal injury protection benefits.

F. A person seeking Uninsured/Underinsured Motorists Coverage must also:

1. Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

G. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any non-owned auto and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any non-owned auto is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F — GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

C. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

### BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. The premium for this policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we may adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that may result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles.

2. Operators using insured vehicles including newly licensed **family member** drivers and any household members that have licenses.

3. The location where your vehicle is principally garaged.

4. Customized equipment or parts.

You also agree to disclose all licensed drivers residing in your household.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

D. Additional or return premium of $3.00 or less resulting from policy changes will be waived.

## PAYMENT OF PREMIUM

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

This provision does not apply if the non-payment is cured within the earlier of 5 days after actual notice by certified mail is received by the applicant or 15 days after notice is sent to the applicant by certified mail or registered mail. If the contract is void, any premium received shall be refunded in full.

## FRAUD

This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an **insured** concealed or misrepresented any material fact or circumstance; or engaged in fraudulent conduct related to this insurance, at the time application was made or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A** — Liability Coverage, no legal action may be brought against us until:

1. We agree in writing that the **insured** has a legal obligation to pay damages; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the legal liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization we shall be subrogated to that right. That person shall:

1. Do whatever is necessary to enable us to exercise our rights; and

2. Do nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part **D** — Coverage for Damage to Your Auto, against any person using your covered auto with your express or implied permission or other person having lawful possession.

We shall not use that right if the person against whom it may be asserted is an **insured** under Part **A** — Liability Coverage of this policy.

Our rights do not apply under paragraph **A.** above with respect to coverage under section 2. of the definition of **uninsured motor vehicle** if we:

1. Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an uninsured motor vehicle; and

2. Fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover advance payment.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

**TERMINATION**

**A. Cancellation.**

This policy may be canceled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written or verbal notice of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

2. The named insured:

   a. may not cancel this policy, if this policy provides Personal Injury Protection or Liability Coverage, or both, during the first 60 days immediately following the date of issuance or renewal unless:

      (1) your covered auto has been totally destroyed so that it is no longer operable on the roads of Florida; or

      (2) the named insured transfers ownership of your covered auto; or

      (3) the named insured obtains other insurance on your covered autos; or

      (4) the named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

   b. may cancel for any reason after this policy is in effect for 60 days.

3. If this is a new policy, during the first 60 days following the effective date of the policy:

   a. We may cancel for nonpayment of premium; and

   b. We may cancel for any other underwriting reason, unless one of the following conditions exists:

      (1) If you or a member of your family is renewing or replacing a policy or a binder for such policy written by us in any of our writing companies; or

      (2) If you pay all policy payments pursuant to a payroll deduction

plan or to an automatic electronic funds transfer payment plan.

4. After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

      (1) any driver who lives with you; or

      (2) any driver who customarily uses your covered auto;

      has been suspended or revoked. This must have occurred during:

      (1) the policy period; or

      (2) the 180 days immediately preceding the original effective date of the policy; or

   c. If the policy was obtained through material misrepresentation or fraud.

5. Except as provided in Section 6., we may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the first-named insured shown in the Declarations at the address shown in the policy:

   a. at least 10 days notice if cancellation is for nonpayment of premium; or

   b. at least 45 days notice in all other cases.

6. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us. If within 15 days of the notice of additional premium due (or a longer time period as specified in the notice), you fail to either:

   a. pay the additional premium and maintain this policy in full force under its original terms; or

   b. cancel this policy and demand a refund of any unearned premium;

   then this policy shall be canceled effective 15 days from the date of the notice (or a longer time period as specified in the notice).

**B. Nonrenewal.**

If we decide not to renew or continue this policy, we will mail notice to the first-named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing.

Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

We will not refuse to renew or continue this policy solely because:

1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege unless you have been convicted of, or plead guilty to:

   a. two such traffic violations within an 18 month period;

   b. three or more such traffic violations within a 36 month period; or

   c. exceeding the lawful speed limit by more than 15 miles per hour; or

2. You have had an accident. However, we may refuse to renew or continue this policy if, at the time of nonrenewal, you have had two or more at-fault accidents, or three or more accidents regardless of fault, within the current 3-year period.

C. **Automatic Termination.** If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

Coverage for your covered auto shall automatically terminate on the effective date of any other motor vehicle insurance policy covering that vehicle.

D. **Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued or renewed:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. If you cancel the policy, we will mail any premium refund, if any, within 30 days after the effective date of the cancellation or receipt of notice of cancellation, whichever is greater. If we cancel the policy, we will mail the premium refund, if any, within 15 days after the effective date of the cancellation. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

B. Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured.

This provision does not apply to you, any family member or any other rated driver listed on the Declarations if you have purchased Uninsured Motorists Coverage — Stacked Option.

**LOSS PAYABLE CLAUSE**

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after proof of mailing that the cancellation notice has been mailed to the loss payee.

When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

## MEDIATION

In any claim filed with us for:

1. Loss resulting from **bodily injury** in any amount of $10,000 or less;

2. Property damage; or

3. Loss to **your covered auto** or any non-owned auto;

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Financial Services on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation, the conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

## STORAGE COSTS

If **you** give **us** **your** consent, **we** may move the damaged property, at **our** expense, to reduce storage costs during the claims process. If **you** do not give **us** **your** consent, **we** will pay only the storage costs which would have resulted if **we** had moved the damaged property.

---

# ADDITIONAL COVERAGES

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

## UNINSURED MOTORISTS COVERAGE — NON-STACKED OPTION

If UNINSURED MOTORISTS COVERAGE NON-STACKED OPTION is chosen, PART C — UNINSURED MOTORISTS COVERAGE — STACKED is replaced by the following:

## INSURING AGREEMENT

A. **We** will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. Sustained by that **insured**; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

Any judgment for damages arising out of suit brought without **our** written consent is not binding on **us**.

B. **"Insured"** as used in this Uninsured Motorists Coverage means:

1. **You** or any **family member**.

2. Any **Rated Driver** shown on the Declarations other than **you** or a **family member**.

3. Any other person occupying **your** covered auto with **your** express or implied permission.

4. Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in B.1., B.2. or B.3. above.

C. **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an

accident resulting in **bodily injury** without hitting:

a. you, any **family member** or any other rated driver listed on the Declarations;

b. a vehicle which you, any **family member** or any other rated driver listed on the Declarations are occupying; or

c. your covered auto.

If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4. To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

a. denies coverage; or

b. is or becomes insolvent.

However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any **family member** unless it is a **your covered auto** to which Part A of the policy applies and liability coverage is excluded for any person other than you or any **family member** for damages sustained in the accident by you or any **family member**.

2. Owned by any governmental unit or agency.

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not upon public roads.

5. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

1. By an **insured** while **occupying** any motor vehicle owned by that **insured** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any **family member** while **occupying** any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim

without our consent. However, this exclusion (B.1.) does not apply:

a. if such settlement does not prejudice our right to recover payment; or

b. to a settlement made with the insurer of a vehicle described in section 2. of the definition of **uninsured motor vehicle**.

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

4. While using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to you, any **family member** or any other rated driver listed on the Declarations using **your covered auto**.

5. While **occupying** or operating a motorcycle or moped owned by you, any **family member** or any other rated driver listed on the Declarations.

6. While using any vehicle while it is:

a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

   (1) race activity; or

   (2) speed, performance, stunt, or demolition contest or exhibition; or

b. participating in a high performance driving or racing instruction course or school.

This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

7. With respect to damages for pain, suffering, mental anguish or inconvenience unless the **bodily injury** consists in whole or in part of:

a. significant and permanent loss of an important bodily function;

b. permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

c. significant and permanent scarring or disfigurement; or

    d.   death.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

    **1.**   Workers compensation law; or

    **2.**   Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for **punitive or exemplary damages.**

## LIMIT OF LIABILITY

**A.** When the **insured is occupying your covered auto** at the time of the accident:

    **1.**   The limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each person" applicable to that **your covered auto** is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in that accident; and

    **2.**   Subject to this limit for "each person", the limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each accident" applicable to that **your covered auto** is our maximum limit of liability for all damages for **bodily injury** resulting from that accident.

**B.** When the **insured** is not occupying **your covered auto** at the time of the accident:

    **1.**   The highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each person" applicable to any of **your covered autos** is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in that accident; and

    **2.**   Subject to this limit for "each person," the highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each accident" applicable to any of **your covered autos** is our maximum limit of liability for all damages for **bodily injury** resulting from that accident.

This is the most we will pay regardless of the number of:

    **1.**   **Insureds;**

    **2.**   Claims made;

    **3.**   Vehicles or premiums shown in the Declarations; or

    **4.**   Vehicles involved in the accident.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

    **1.**   Part A — Liability Coverage of this policy;

    **2.**   No-fault coverage; or

    **3.**   Automobile medical payments coverage.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

    **1.**   Workers compensation law; or

    **2.**   Disability benefits or occupational disease laws.

**F.** With respect to coverage under Paragraph **2.** of the definition of **uninsured motor vehicle**, we will reduce the **insured's** total damages by any amount available to that **insured**, under any bodily injury bonds or policies applicable to the **uninsured motor vehicles**, that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **uninsured motor vehicle**. However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

This Paragraph (**F.**) shall not apply if we advance payment to the **insured** in an amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle**.

**G.** A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

**H.** If Combined Single Limit Uninsured Motorists Coverage applies, Paragraphs **A.** and **B.** of the Limit of Liability Provision for Uninsured Motorists Coverage is replaced by the following:

The limit of liability shown in the Declarations for this coverage applicable to the **your covered auto** involved in the accident is our maximum limit of liability for all damages for **bodily injury** resulting from that accident. If there is no **your covered auto** involved in the accident, then our maximum limit of liability for all damages for **bodily injury** resulting from that accident will be the highest limits of liability shown in the Declarations for this coverage applicable to any one **your covered auto.** This is the most we will pay regardless of the number of:

    **1.**   **Insureds;**

    **2.**   Claims made;

    **3.**   Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Uninsured Motorists Coverage:

1. Any recovery for damages sustained by you, any family member or any other rated driver listed on the Declarations:

   a. while occupying a vehicle owned by you, any family member or any other rated driver listed on the Declarations may equal, but not exceed, the limit of liability for Uninsured Motorists Coverage applicable to that vehicle;

   b. while occupying a vehicle not owned by you, any family member or any other rated driver listed on the Declarations may equal but not exceed, the sum of:

      (1) the limit of liability for Uninsured Motorists Coverage applicable to the vehicle you, any family member or any other rated driver listed on the Declarations were occupying at the time of the accident; and

      (2) the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you, any family member or any other rated driver listed on the Declarations;

   c. if at the time of the accident the injured person is not occupying a motor vehicle, he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which he is insured as a named insured or as an insured resident of the named insured's household.

2. Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## ARBITRATION

A. If we and an insured do not agree:

   1. Whether that insured is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that insured;

from the owner or operator of an uninsured motor vehicle, then the matter may be:

1. Mediated, in accordance with the Mediation provision contained in Part F — General Provisions of the policy, if the damages resulting from bodily injury are for $10,000 or less; or

2. Arbitrated. However, disputes concerning coverage under this Uninsured Motorists Coverage may not be arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

B. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

   Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

   1. Whether the insured is legally entitled to recover damages; and

   2. The amount of damages.

## FLORIDA ARBITRATION CODE

If we and an insured agree to arbitration, the Florida Arbitration Code will not apply.

## ADDITIONAL DUTIES

A person seeking Uninsured Motorists Coverage under section 2. of the definition of uninsured motor vehicle must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing by certified or registered mail of a tentative settlement between the insured and the insurer of the uninsured motor vehicle and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle.

## EXTENDED PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

If the Declarations indicates that Extended Personal Injury Protection applies, we will provide this coverage subject to the provisions of the policy unless modified below:

A. We will pay in accordance with the Florida Motor Vehicle No-Fault Law as amended, extended personal injury protection benefits to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the ownership, maintenance or use of a motor vehicle and sustained by:

1. You or any family member while occupying a motor vehicle or, while a pedestrian, through being struck by a motor vehicle.

2. Any other person while occupying your covered auto or, while a pedestrian, through being struck by your covered auto.

B. Extended personal injury protection benefits consist of:

1. Medical Benefits. 80% of reasonable expenses as listed in the schedule under the Florida Motor Vehicle No-Fault Law, §627.736(5)(a) for medically necessary medical, surgical, X-ray, dental, and rehabilitative services including prosthetic devices, and medically necessary ambulance, hospital, and nursing services if the individual receives initial services and care within 14 days after the motor vehicle accident. The medical benefits provide reimbursement only for:

   a. Initial services and care that are lawfully provided, supervised, ordered or prescribed by a physician licensed under Florida statutes or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under Florida statutes which provides emergency transportation and treatment.

   b. Upon referral by a provider described in 1.a. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to 1.a. above which may be provided, supervised, ordered, or prescribed only by a physician, chiropractic physician or dentist licensed under Florida statutes to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida statutes to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida statutes. Follow-up services and care may also be provided by any of the following persons or entities:

      (1) a hospital or ambulatory surgical center licensed under Florida statutes.

      (2) an entity wholly owned by one or more physicians, chiropractic physicians or dentists licensed under Florida statutes or by such physicians and the spouse, parent, child, or sibling of such practitioners.

      (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital.

      (4) a physical therapist licensed under Florida statutes based upon a referral by a provider described in this 1.b. provision.

      (5) an accredited and licensed health care clinic as prescribed by Florida statutes.

   c. reimbursement for services and care provided in 1.a. or 1.b. above, up to $10,000 if a physician, dentist, physician assistant or an advanced registered nurse practitioner licensed under Florida statutes has determined that the injured person had an emergency medical condition.

   d. reimbursement for services and care provided in 1.a. or 1.b. is limited to $2,500 if any provider listed in 1.a. or 1.b. determines that the injured person did not have an emergency medical condition.

   e. medical benefits do not include massage as defined in Florida statutes, §480.033 or acupuncture as defined in Florida statutes, §457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for medical benefits under this section.

Medical benefits shall only be reimbursed up to 80% of the schedule of maximum charges listed in the Florida Motor Vehicle No-Fault Law §627.736(5)(a), Florida Statutes for such services and care that are lawfully provided, supervised, ordered or prescribed by a healthcare provider or facility authorized under Florida's Motor Vehicle No-Fault Law as amended.

We will pay:

a.  100% of medical benefits incurred by you or any family member; and

b.  80% of medical benefits incurred by any other Insured;

due to bodily injury.

2.  **Disability.** With respect to the period of disability of an **Insured**, for any loss of gross income and earning capacity from that **Insured's** inability to work due to bodily injury. However, disability does not include any loss after an **Insured's** death.

We will pay:

a.  **80% of disability** to or for you or any family member.

b.  **60% of disability** to or for any other **Insured**.

3.  **Replacement Services.** With respect to the period of disability of an **Insured**, all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the **Insured** would have performed, without income, for the benefit of the **Insured's** household had the **Insured** not sustained bodily injury.

4.  **Accidental Death.** A death benefit.

C.  **DEFINITIONS APPLICABLE TO THIS COVERAGE**

1.  For purposes of Extended Personal Injury Protection Coverage, a **motor vehicle** shall be deemed to be owned by a person if that person:

a.  holds the legal title to such vehicle.

b.  is a debtor having the right to possession, if such vehicle is the subject of a security agreement.

c.  is a lessee having the right to possession, if such vehicle is the subject of a lease which:

(1) has an option to purchase; and

(2) is for a period of at least 6 months.

d.  is a lessee having the right to possession, if such vehicle is the subject of a lease which:

(1) does not have an option to purchase;

(2) is for a period of at least 6 months; and

(3) requires the lessee to secure insurance.

2.  **"Emergency medical condition"** in this coverage means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

a.  serious jeopardy to patient health.

b.  serious impairment to bodily functions.

c.  serious dysfunction of any body organ or part.

3.  **"Insured"** means:

a.  you or any **family member** while:

(1) occupying; or

(2) a pedestrian struck by;

a motor vehicle.

b.  any other person while:

(1) occupying; or

(2) a pedestrian struck by;

your covered auto.

4.  **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of prevention, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

a.  in accordance with the generally accepted standards of medical practice;

b.  clinically appropriate in terms of type, frequency, extent, site and duration; and

c.  not primarily for the convenience of the patient, physician or other health care provider.

5.  **"Motor vehicle"** means:

a.  any self-propelled vehicle with four or more wheels which is:

(1) designed; and

(2) required to be licensed;

for use on Florida highways.



**b.** any trailer or semitrailer designed for use with such vehicle.

However, "**motor vehicle**" does not include:

**a.** any motor vehicle which is:

    **(1)** used in mass transit other than public school transportation;

    **(2)** designed to transport more than five passengers (excluding the operator); and

    **(3)** owned by a:

        **(a)** municipality;

        **(b)** transit authority; or

        **(c)** political subdivision of the state.

**b.** a mobile home.

**6.** "**Occupying**" means:

    **a.** in or upon;

    **b.** entering into; or

    **c.** alighting from.

**7.** "**Pedestrian**" means a person who is not occupying a self-propelled vehicle.

**8.** "**Your covered auto**" means a motor vehicle owned by you and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law as amended, and either:

    **a.** a premium is charged; or

    **b.** it is a trailer, other than a mobile home, designed for use with a motor vehicle.

**EXCLUSIONS**

**A.** We do not provide Extended Personal Injury Protection Coverage for any Insured:

**1.** While operating your covered auto without your express or implied consent.

**2.** If that Insured's conduct contributed to his/her bodily injury under any of the following circumstances:

    **a.** intentionally causing bodily injury to himself/herself; or

    **b.** while committing a felony.

**3.** Other than you, if that Insured owns a motor vehicle for which security is required under the Florida Motor Vehicle No-Fault Law as amended.

**4.** Other than you or any family member, who is entitled to personal injury protection benefits from a person who owns a motor vehicle which is not a vehicle covered under this policy, or from that vehicle's owner's policy.

**5.** Who sustains bodily injury while occupying a motor vehicle located for use as a residence or premises.

**B.** We do not provide Extended Personal Injury Protection Coverage for:

**1.** You or any family member while occupying a motor vehicle which is:

    **a.** owned by you; and

    **b.** not a vehicle covered under this policy.

**2.** Any pedestrian, other than you or any family member who is not a legal resident of Florida.

**3.** Any person operating your covered auto without your express or implied consent.

**PAYMENT OF LOSS**

We may pay the Insured or any person or organization providing the medical services, supplies or care.

**LIMIT OF LIABILITY**

**A.** Regardless of the number of:

**1.** Insureds;

**2.** Policies or bonds applicable;

**3.** Vehicles involved; or

**4.** Claims made;

the total aggregate limit of liability for all personal injury protection benefits available, to or for each Insured injured in any one accident, from all sources combined, including this policy shall be $10,000. Regardless of whether payments are made under the No-Fault Law or under Extended Personal Injury Protection, the $10,000 limit is the maximum payable under this Extended Personal Injury Protection Coverage.

**B.** Any amount payable under this Extended Personal Injury Protection Coverage shall be reduced by any amounts paid or payable for the same elements of loss under any workers compensation laws.

**C.** Any coverage provided under any Uninsured Motorists Coverage of this policy shall be excess over any personal injury protection benefits paid or payable.

**D.** Any amounts payable under Extended Personal Injury Protection for medical benefits may be limited by the schedule of maximum charges for services, supplies and care as listed in the schedule under the Florida Motor Vehicle No-Fault Law §627.736(5)(a), Florida Statutes.

**E.** Any death benefit payable under Extended Personal Injury Protection shall be $5,000 per person. Death benefits are in addition to

the medical benefits, disability and replacement services provided under the policy.

## OTHER INSURANCE

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an **insured** receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an **insured** sustains bodily injury while:

1. Occupying; or

2. Struck by a motor vehicle rented or leased under a rental or lease agreement;

the personal injury protection benefits afforded under the lessor's policy shall be primary.

This provision (B.) does not apply if the face of the rental or lease agreement contains, in at least 10-point type, the following language:

The valid and collectible personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of personal injury protection coverage required by §324.021(7) and §627.736 Florida Statutes.

## GENERAL PROVISIONS APPLICABLE TO THIS COVERAGE ONLY

With respect to this coverage, Part F — General Provisions is revised as follows:

## POLICY TERRITORY

The policy territory is:

1. Florida.

2. The United States of America, its territories or possessions or Canada.

This provision applies only to:

a. you or any family member while occupying your covered auto; or

b. you while occupying a motor vehicle:

(1) owned by any family member; and

(2) for which security is maintained as required by the Florida Motor Vehicle No-Fault Law as amended.

## FRAUD

We do not provide Personal Injury Protection Coverage for an **insured** if that **insured** has committed, by a material act or omission, any insurance fraud relating to Personal Injury Protection Coverage under this policy, and if the fraud is:

1. Admitted to in a sworn statement by the **insured;** or

2. Established in a court of competent jurisdiction.

We may deny coverage or void all Personal Injury Protection Coverage arising from the claim with respect to the **insured** who committed any insurance fraud. Any benefits paid prior to the discovery of that **insured's** fraud shall be recoverable from that **insured.**

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us:

1. Until the claim for benefits is overdue in accordance with the provisions of Payment of Benefits, paragraph 1.; and

2. Until a demand letter is provided to us in accordance with the requirements of the Florida Motor Vehicle No-Fault Law as amended; and

3. With respect to the overdue claim specified in the demand letter, if we have:

a. paid the overdue claim; or

b. agreed to pay for future treatment not yet rendered;

within 30 days from the date of receipt of the demand letter by us, in accordance with the requirements of the Florida Motor Vehicle No-Fault Law as amended.

The demand letter shall be mailed to us by U.S. certified mail or registered mail, return receipt requested.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured.**

C. If legal action is brought against us, all claims related to the same health care provider for the same **insured** shall be brought in one action, unless good cause is shown why such claims should be brought separately.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this Extended Personal Injury Protection Coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

1. Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and

2. Do nothing after loss to prejudice these rights.



**B.** If we make a payment under this Extended Personal Injury Protection Coverage and the person to or for whom payment was made sustained **bodily injury** while:

1. **Occupying;** or

2. **A pedestrian** struck by;

a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law as amended, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

## PAYMENT OF BENEFITS

1. Benefits payable under Extended Personal Injury Protection may be overdue if not paid within 30 days after written notice of loss and the amount of loss have been filed with us in accordance with the provisions of the Florida Motor Vehicle No-Fault law as amended.

2. We may, at our option, pay any medical benefits to the:

   **a.** **Insured;** or

   **b.** person or organization providing services or supplies for such benefits.

   However, we will not pay:

   **a.** a claim or charges for such benefits made by a:

   (1) broker, as defined in the Florida Motor Vehicle No-Fault Law as amended; or

   (2) person making the claim on behalf of such broker.

   **b.** any charge or reimbursement made by or on behalf of a clinic that is required to be licensed with the Agency For Health Care Administration:

   (1) but is not so licensed; or

   (2) that is otherwise operating in violation of the Florida Health Care Clinic Act.

   **c.** a claim or charges for such benefits:

   (1) for any service or treatment that was not lawful at the time rendered;

   (2) to any person who knowingly submits a false or misleading statement relating to the claim or charges;

   (3) with respect to a bill or statement that does not substantially meet the applicable requirements of FLA. STAT. SECTION §627.736(5)(d);

   (4) for any service or treatment that is:

   (a) upcoded; or

   (b) that is unbundled when such treatment or service should be bundled;

   in accordance with the provisions of the Florida Motor Vehicle No-Fault Law as amended;

   (5) for any medical services or treatment billed by a physician and not provided in a hospital unless such services or treatment:

   (a) are actually rendered by the physician or are incident to the physician's professional services; and

   (b) are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services or treatment that were rendered and billed.

   **d.** for any invalid diagnostic test as determined by the Florida Department of Health in accordance with the Florida Motor Vehicle No-Fault Law as amended.

   **e.** charges for any services rendered by any person who violates the provisions of FLA. STAT. SECTION 817.234(8) in regard to the **insured** for whom such services were rendered and with respect to soliciting business or causing business to be solicited from any **insured** involved in a motor vehicle accident for the purpose of making:

   (1) motor vehicle tort claims; or

   (2) claims for personal injury protection benefits.

If a person seeking Extended Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until, at the trial level:

1. The prosecution makes a formal entry on the record that it will not prosecute the case against that person;

2. The charge is dismissed; or

3. That person is acquitted.

## MODIFICATION OF POLICY COVERAGES

**A.** Any coverage provided under Part B — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall

be excess over any personal injury protection benefits paid or payable.

**B.** Regardless of whether the limits for personal injury protection benefits have been exhausted, any coverage provided under Part B — Medical Payments Coverage shall pay the amount of any claim for medical benefits payable under this coverage which exceeds the 80% limitation for medical benefits.

**C.** No coverage is provided under Part B — Medical Payments Coverage for the amount of any applicable deductible under Extended Personal Injury Protection Coverage.

## PROVISIONAL PREMIUM

**A.** In the event of any change in the:

1. Rules;
2. Rates;
3. Rating plan;
4. Premiums; or
5. Minimum premiums;

applicable to Extended Personal Injury Protection, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law as amended which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under Part A — Liability Coverage, Part B — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be deemed to be provisional and subject to recomputation.

**B.** If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to you, in accordance with the Florida Motor Vehicle No-Fault Law as amended, with respect to insurance provided under a previous policy.

**C.** If the final recomputed premium exceeds the premium shown in the Declarations, you shall pay us:

1. The excess amount; and
2. The amount of any return premium previously credited or refunded.

## ADDITIONAL PERSONAL INJURY PROTECTION COVERAGE

If the Declarations indicates that Additional Personal Injury Protection applies, we will pay Additional Personal Injury Protection benefits subject to the provisions of Personal Injury Protection Coverage unless amended below.

We will pay you or any **family member** injured in an auto accident, any Additional Personal Injury

Protection benefits payable after the benefits under any other Personal Injury Protection Coverage under this policy has been paid, subject to the Schedule below and the following:

1. All reasonable and necessary **medical benefits** subject to the following:

   **Medical benefits** shall only be reimbursed for such services and care that are lawfully provided, supervised, ordered or prescribed by a healthcare provider or facility authorized under Florida's Motor Vehicle No-Fault Law as amended §627.736(5)(a), Florida Statutes.

   We will pay:

   **a.** 100% of **medical benefits** as listed in the schedule under the Florida Motor Vehicle No-Fault Law as amended §627.736(5)(a), Florida Statutes incurred by **you** or any **family member**; and

   **b.** 80% of **medical benefits** as listed in the schedule under the Florida Motor Vehicle No-Fault Law as amended §627.736(5)(a), Florida Statutes incurred by any other **insured**;

   due to **bodily injury.**

2. 80% of disability; and

3. Replacement services expenses;

   incurred while occupying a motor vehicle or, while a pedestrian through being struck by a motor vehicle.

## EXCLUSIONS

The exclusions of the Personal Injury Protection Coverage apply to Additional Personal Injury Protection Coverage. In addition, Additional Personal Injury Protection Coverage does not apply to **bodily injury** sustained by any **insured** while:

1. Occupying; or

2. A pedestrian through being struck by,

a motor vehicle owned by that **insured** and which is not insured for Additional Personal Injury Protection under this policy.

## LIMIT OF LIABILITY

**A.** The Limit of Liability provision of the Personal Injury Protection Coverage does not apply to this Additional Personal Injury Protection Coverage.

**B.** Regardless of the number of:

1. **Insureds;**

2. Policies or bonds applicable;

3. Vehicles involved; or

4. Claims made;



our limits of liability for each person for additional personal injury protection benefits for you or any **family member** with respect to **bodily injury** sustained in any one motor vehicle accident shall not exceed the amount set forth in the following schedule:

**SCHEDULE**

| Additional Personal Injury Protection Option Stated in the Declarations | Total Limit Applicable to all Additional Personal Injury Protection benefits |
|---|---|
| Option 1 | $10,000 |
| Option 2 | 25,000 |

**C.** Any coverage provided under any Uninsured Motorists Coverage of this policy shall be excess over any personal injury protection benefits paid or payable.

**D.** Any amount payable under the terms of this Additional Personal Injury Protection Coverage shall be reduced by any amount paid or payable for the same elements of loss under any workers compensation laws.

**E.** Any amounts payable under this Additional Personal Injury Protection Coverage for **medical benefits** may be limited by the schedule of maximum charges for services, supplies and care.

**F.** Any death benefit payable under this Additional Personal Injury Protection Coverage shall be $5,000 per person. Death benefits are in addition to the **medical benefits, disability** and replacement services provided under the policy.

**OTHER INSURANCE**

Additional Personal Injury Protection Coverage shall be excess over any Extended Personal Injury Protection Coverage.

**SUBROGATION**

If we make a payment under Additional Personal Injury Protection Coverage, we are subrogated to the rights of the person to whom or for whose benefit such payments were made, to the extent of such payments. That person shall:

1. Execute and deliver instruments and papers and do whatever else is necessary to secure these rights.

2. Do nothing after loss to prejudice such rights.

Our rights are subject to the provisions of the Florida Motor Vehicle No-Fault Law as amended.

**ROADSIDE ASSISTANCE COVERAGE CALL 1-877-ROAD 101 (1-877-762-3101)**

**"Your covered auto"** as used in this endorsement means a private passenger vehicle, motor home or trailer owned by you and for which a specific premium is shown on the Declarations for this coverage.

The following coverages apply to each vehicle for which this coverage is shown on the Policy Declarations:

1. Each time **your covered auto** or any non-owned auto is disabled due to mechanical or electrical breakdown we will pay reasonable and necessary expenses for the use of an **authorized service provider** to tow or flatbed **your covered auto** or non-owned auto up to 15 miles or to the nearest qualified place where necessary repairs can be made during regular **business** hours.

2. Each time **your covered auto** or any non-owned auto is disabled requiring:

   a. Towing to dislodge the vehicle from its place of disablement within 100 feet of a public street or highway; or

   b. Labor, including change of tire, at the place of its breakdown; or

   c. Delivery of fuel, oil, water or other fluids (we do not pay the costs of these items); or

   d. Key lock-out services;

   we will cover up to one (1) hour of labor for the use of an **authorized service provider** for service at the place of disablement.

3. For policies with a 6 month term, coverage is limited to no more than two occurrences per vehicle plus an additional two occurrences per policy in a 6 month policy period for both coverages 1. and 2., above.

4. For policies with an annual policy term, coverage is limited to no more than four occurrences per vehicle plus an additional four occurrences per policy in a 12 month policy period for both coverages 1. and 2. above.

**Authorized service provider** means a service provider contracted by us providing, at no charge to you, roadside assistance as described and limited above.

When service is provided by other than an **authorized service provider, we** will reimburse you only for reasonable charges as determined by us.

No deductible applies to this coverage.

## LOSS OF USE COVERAGE

The provisions and exclusions that apply to Part D — Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use is afforded, we will reimburse you for expenses you incur to rent a substitute vehicle.

This coverage applies only if:



1. The vehicle is withdrawn from use for more than 24 hours;



2. The loss is caused by **collision**, or is covered by the Comprehensive Coverage of this policy; and

3. The loss exceeds the appropriate **collision** or **comprehensive** deductible applying to the vehicle.

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the vehicle.

Our payment will be limited to that period of time reasonably required to repair or replace the vehicle. We will pay up to the amount per day and the maximum shown for Loss of Use in the Declarations.

No deductible applies to this coverage.



# SAFECO OPTIMUM PACKAGE™

The additional coverages described below are applicable to **your covered auto** or **non-owned auto** when the Declarations page shows that this endorsement applies to **your covered auto**. The provisions of the policy apply unless modified below:

## DIMINISHING DEDUCTIBLE

The collision deductible shown on the Declarations for **your covered autos** will be reduced to the amount shown for the diminishing deductible on the Declarations. Eligibility for the diminishing deductible will begin on the first renewal that occurs after this endorsement has been effective for six months for six month policies or twelve months for annual policies. and will continue until after there is an at-fault accident surcharged under this policy.

## NON-OWNED TRAILER COVERAGE

Part D — Limit of Liability is revised as follows:

**Limit of Liability**

The most we will pay for loss to any **non-owned auto**, which is a trailer, is $3,000.

## EMERGENCY EXPENSES

A.  We will reimburse you up to $200 for necessary expenses actually incurred by you or a **family member** if **your covered auto** or any **non-owned auto** is disabled to the degree that it may not be driven safely. Coverage begins at the place of disablement and ends when you or any **family member** arrives at:

1.  Your residence; or

2.  The nearest location your covered auto or non-owned auto can be repaired or replaced.

B.  If you are more than 25 miles from your residence and **your covered auto** or any **non-owned auto** sustains a loss covered under the Collision or Comprehensive coverages of your policy and is inoperable or uninhabitable, we will pay up to $1,000 in any one occurrence, for reasonable and necessary expenses for:

1.  Alternative transportation for you to continue to your destination or residence.

2.  Meals and lodging necessary when the loss to **your covered auto** or any **non-owned auto** causes a delay in your travel. The expenses must be incurred between the time of the loss and your arrival at your destination or residence or by the end of the fifth day, whichever comes first.

3.  Meals, lodging and transportation expenses you incur when you or any other person you choose drives **your covered auto** or **non-owned auto** from the place of repair to your destination or residence.

No deductible applies to this coverage.

## PERSONAL PROPERTY COVERAGES

A.  We will pay up to $1,000 in any one loss for loss or damage to personal property owned or used by you or any **family member**, while located in **your covered auto** or **non-owned auto**. This coverage does not apply to:

1.  Any animals, birds or fish;

2.  Motorized vehicles;

3.  Aircraft;

4.  Property carried or held as samples or for sale or delivery after sale;

5.  Property rented or held for rental to others.

Safeco Optimum Package is a registered trademark of Safeco Corporation

6.   Money or currency, pre-paid cards or passes, monetary value carried on an electronic chip or magnetic cards, securities, debit cards, checks, cashier's checks, travelers checks, money orders and other negotiable instruments.

The Exclusions under Part D — Coverage for Damage to Your Auto apply to this coverage.

For purposes of coverage under Personal Property Coverage only one applicable deductible shall apply to all loss arising out of one event.

---

## WAIVER OF ADJUSTMENT FOR DEPRECIATION AND BETTERMENT

### Limit of Liability

The Limit of Liability under Part D of the policy for **your covered auto** is revised as follows:

Part B of the provision is deleted.

---

## ELECTRONIC LOCK AND KEY REPLACEMENT DEDUCTIBLE WAIVER

If the electronic keys or electronic remote control pads to **your covered auto** are lost or stolen, we will pay for replacement of electronic keys, electronic remote control pads and the locks or codes without application of a deductible.

---

## WORLD-WIDE COVERAGE FOR PHYSICAL DAMAGE AND INDIRECT LOSS OF USE OF RENTAL VEHICLES

We will provide Comprehensive and/or Collision Coverage subject to the provisions of Part D of the policy for any private passenger auto you or a **family member** rent for up to 90 days anywhere in the world. In addition we will pay up to $25 per day subject to a maximum limit of $750, or the limit for Loss of Use shown in the Declarations, whichever is greater, for indirect loss expense for which you become legally responsible to a rental car company in the event of a comprehensive or collision loss to the rental vehicle. Our payment for indirect loss expense will be limited to that period of time reasonably required to repair or replace the rental vehicle. If a rental car company disputes an amount paid by us, we will be responsible for resolving such disputes.

---

All other provisions of this policy apply.

This policy has been signed by our President and Secretary.



Timothy M. Sweeney
President

Dexter Legg
Vice President and Secretary

This policy includes copyrighted material of Insurance
Services Office, Inc. with its permission.

SA-1701/FLEP 3/09
G2





## FLORIDA REPORTING REQUIREMENT

First, your agent and we appreciate having you as a customer, and we promise to do all possible to cause you to want to continue your insurance with us.

If you ever have questions about any insurance matter, please talk with your agent who will be happy to help you.

Second, we want you to know that, with respect to Personal Injury Protection, Florida law requires us to report any cancellation or nonrenewal of a policy to the Department of Highway Safety and Motor Vehicles.

You should know, too, that failure to maintain Personal Injury Protection and Property Damage Liability insurance on a motor vehicle, when required by law, may result in the loss of registration and driving privileges in Florida.

SA-1611/FLEP 2/89
GS

## POLICYHOLDER NOTICE
### (Florida Hurricane Catastrophe Fund Assessment)

Florida law requires licensed insurers that write certain lines of business in the state to collect the Florida Hurricane Catastrophe Fund (FHCF) assessment from their policyholders and pay it to the FHCF.

The assessment is given in full to the Florida Hurricane Catastrophe Fund and no compensation or benefit is provided to the agent or insurer.

If this assessment applies to your policy, the term "FHCF Assessment", along with the indicated dollar amount, will be displayed on your policy's Declarations Page.

Please contact your Independent Agent if you have any questions regarding this assessment or your policy.

SA-2704/EP 8/06






# NOTICE OF CHANGES TO YOUR AUTO POLICY

This summary describes changes we believe are most significant to your auto policy. You can find detailed information about your coverages in the enclosed Amendatory Endorsement. Please take the time to read your new Amendatory Endorsement thoroughly.

**If the Declarations indicates that Medical Payments Coverage applies to your policy,** the following changes were made:

- Medical expenses shall only be reimbursed up to 80% of the schedule of maximum charges as listed under the Florida No-Fault law and such services and care are lawfully administered by a licensed provider according to Florida law.

- Massages and acupuncture are not covered under Medical Payments Coverage

- Initial services for medical care must have incurred within 14 days of the auto accident in order for Medical Payments Coverage to apply.

- Supplemental payment under Medical Payments Coverage for claims in excess of personal injury protection benefits will not apply if an emergency medical condition did not occur.

- Any amounts payable under Medical Payments Coverage are subject to Medicare coding policies and payment methods.

**If the Declarations indicates that Uninsured Motorists Coverage (Stacked Option) applies to your policy,** the coverage was revised to address non-stacking for insureds other than you or a family member. If you previously chose Uninsured Motorists Coverage (Stacked Option) as indicated in the Declarations, you or any family member are provided Uninsured Motorists Coverage at limits up to the sum of the limits of liability shown for Uninsured Motorists Stacked Coverage shown on your Declarations. However, for insureds who are neither you nor a family member, Uninsured Motorists Coverage is now only available up to the limit of liability shown in the Declarations for the vehicle involved in the accident. They may not add up all of the available limits for Uninsured Motorists Coverage listed on the Declarations.

You should read the new endorsement along with your policy and Declarations carefully and keep all of these materials for your records.

Thank you for entrusting us with your insurance needs. We appreciate having you as a customer. If you have any questions about your new policy, please contact your independent Safeco agent or broker listed on your policy Declarations.

No coverage is provided by this summary. If there is any conflict between the policy and this summary, the provisions of the policy, including any endorsements, shall prevail.

SA-2736/FLEP 12/13

## AMENDATORY ENDORSEMENT — FLORIDA

It is agreed that the policy is amended as follows:

**PERSONAL INJURY PROTECTION COVERAGE**

**LIMIT OF LIABILITY**

The Limit of Liability is revised by replacing **E.** and **F.** with the following:

**E.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

**F.** The amount of any deductible shown in the Declarations must be applied to 100 percent of the following required personal injury protection related expenses and losses: The total amount otherwise payable under this coverage for:

1. **Medical benefits;**

2. **Disability; and**

3. **Replacement services;**

for each **insured** to whom the deductible applies. Accidental death is not subject to a deductible.

**G.** Any amounts payable under this coverage for medical benefits shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law. We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will we pay more than 80 percent of the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's **usual and customary charges.**

3. For emergency services and care as defined by § 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the **usual and customary charges** in the community.

4. For hospital inpatient services, other than emergency services and care, 200

percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   a. The participating physicians fee schedule of Medicare Part B, except as provided in subsubparagraphs II and III.

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment. However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under § 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us. For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**H.** Any death benefit payable under Personal Injury Protection Coverage shall be $5,000 per person. Death benefits are in addition to the






medical benefits, disability and replacement services provided under the policy.

## PART B — MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

Item **A.** is replaced by the following:

**A.** We will pay usual and customary charges incurred for reasonable and necessary medical and funeral expenses because of **bodily injury**:

1. Caused by accident; and

2. Sustained by an **insured**.

Medical Payments Coverage does not cover:

1. Massage, regardless of the person, entity or licensee providing massage, and a licensed massage therapist may not be reimbursed for medical benefits.

2. Acupuncture, regardless of the person, entity or licensee providing acupuncture, and a licensed acupuncturist may not be reimbursed for medical benefits.

We will pay only those expenses:

1. Incurred for services rendered within three (3) years from the date of the accident; and

2. The initial services and care were received within 14 days after the motor vehicle accident.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

The following definition is added:

**C.** "**Emergency medical condition**" in this coverage means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

a. serious jeopardy to patient health.

b. serious impairment to bodily functions.

c. serious dysfunction of any body organ or part.

### LIMIT OF LIABILITY

The Limit of Liability provision is replaced by the following:

**A.** The limit of liability shown in the Declarations for this Medical Payments Coverage is our maximum limit of liability for each person injured in any one accident.

This is the most we will pay regardless of the number of:

1. **insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

The maximum limit of liability for the total of all Medical Payment Coverage shown in the Declarations is the total aggregate limit for Medical Payments Coverage available, to or for each **insured** injured in any one accident, from all sources combined, including this policy, if the **insured** receives initial services and care within 14 days after the motor vehicle accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this Medical Payments Coverage and Part A — Liability Coverage or any Uninsured Motorists Coverage of this policy.

**C.** No one will be entitled to receive supplemental payment under Medical Payments Coverage for claims in excess of Personal Injury Protection Coverage limits if they did not sustain an emergency medical condition as defined under Personal Injury Protection Coverage.

**D.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

**E.** Any amounts payable under this coverage shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law. We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will we pay more than 80 percent of the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by § 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related

hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   a. The participating physicians fee schedule of Medicare Part B, except as provided in subparagraphs II and III.

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under § 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

## PART C — UNINSURED MOTORISTS COVERAGE (STACKED OPTION)

### LIMIT OF LIABILITY

The Limit of Liability provision is replaced by the following:

A. Our maximum limit of liability for you, any family member or any other rated driver listed in the Declarations for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident is the sum of the limits of liability shown in the Declarations for "each person."

Subject to this limit for "each person," our maximum limit of liability for you, any family member or any other rated driver listed in the Declarations, for all damages arising out of **bodily injury** resulting from any one accident is the sum of the limits of liability shown in the Declarations for "each accident."

B. For insureds other than you, any family member or any other rated driver listed in the Declarations the limit of liability shown in the Declarations for "each person" for Uninsured Motorists Coverage applicable to your covered auto that the insured was occupying at the time of the accident, is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in any one accident.

Subject to this limit of "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage applicable to your covered auto that the insured, other than you, any family member or any other rated driver listed in the Declarations, was occupying at the time of the accident, is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

C. This is the most we will pay regardless of the number of:

   1. Insureds;

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

However, no one will be entitled to receive duplicate payments for the same elements of loss as a result of the application of this provision.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** — Liability Coverage of this policy;

2. No-fault coverage; or

3. Automobile medical payments coverage.

E. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers compensation law; or

2. Disability benefits law.

G. With respect to coverage under Paragraph 2. of the definition of **uninsured motor vehicle**, we will reduce the **insured's** total damages by any amount available to that **insured**, under any bodily injury liability bonds or policies applicable to the **uninsured motor vehicles**, that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **uninsured motor vehicle**. However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

This Paragraph (G.) shall not apply if we advance payment to the **insured** in an amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle**.

H. A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

I. If Combined Single Limit Uninsured Motorists Coverage applies the paragraphs under A. and B. of the Limit of Liability provision for Uninsured Motorists Coverage (Stacked Options) are replaced by the following:

The maximum limit of liability for Uninsured Motorists Coverage in any accident involving you, any **family member** or any other rated driver listed in the Declarations is the sum of the Uninsured Motorists Coverage limits shown in the Declarations applicable to each vehicle in the Declarations.

The maximum limit of our liability for Uninsured Motorists Coverage in any one accident involving an **insured** other than you, any **family member** or any other rated driver listed in the Declarations is the limit shown on the Declarations applicable to the vehicle that the **insured** was occupying at the time of the accident.

This is the most we will pay regardless of the number of:

1. **insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

PART E — DUTIES AFTER AN ACCIDENT OR LOSS

Item C. is replaced by the following:

C. We may require any person, including an omnibus **insured**, making a claim with us to also:

1. Submit a proof of loss, under oath if requested, when required by us;

2. Submit to examinations under oath, as often as reasonably needed, and subscribe to the same. The examination under oath may be recorded by audio, video, court reporter or any combination thereof. We may examine any **insured** separately and a part from the presence of any other **insured**.

3. Submit to interviews and recorded statements within 20 days without the need for us to conduct an examination under oath. The recorded interview may be recorded by audio, video or court reporter or any combination thereof.

Compliance with these requirements is a condition precedent to filing suit under the policy.

PART F — GENERAL PROVISIONS

TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

This provision is deleted for Named Non-Owner Policies and revised as follows for Safeco Personal Auto Policies:

Item 1. is replaced by the following:

1. This provision does not apply to Uninsured Motorists Coverage to you, any **family member** or any other rated driver listed in the Declarations if you have purchased Uninsured Motorists Coverage — Stacked Option.

## ADDITIONAL COVERAGES

### EXTENDED PERSONAL INJURY PROTECTION COVERAGE

The Limit of Liability provision is amended as follows:

Items D. and E. are deleted and replaced by the following:

D. Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

E. The amount of any deductible shown in the Declarations must be applied to 100 percent of the following required personal injury protection related expenses and losses:

The total amount otherwise payable under this coverage for:

1. Medical benefits;

2. Disability; and

3. Replacement services;

for each insured to whom the deductible applies. Accidental death is not subject to a deductible.

F. Any amounts payable under this coverage for medical benefits shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law.

We will limit reimbursement of medical expenses to 100 percent of a properly billed reasonable charge, but in no event will we pay more than 100 percent of the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by § 395.002(9), Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200

percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under

a. The participating physicians fee schedule of Medicare Part B, except as provided in subsubparagraphs II and III.

b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under § 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

G. Any death benefit payable under Extended Personal Injury Protection Coverage shall be $5,000 per person. Death benefits are in addition to the medical benefits, disability and replacement services provided under the policy.



**Safeco** Insurance™
A Liberty Mutual Company

**POLICY NUMBER:  UF2251286**

## SAFECO INSURANCE COMPANY OF AMERICA
## PERSONAL UMBRELLA POLICY DECLARATIONS

**INSURED:**
STEPHEN W BROOKS
MARGRETTA H BROOKS
2303 W BRISTOL AVE
TAMPA FL  33609-4703

**AGENT:**
RIP WEACHTER INS AGENCY, INC
INSURANCE INTERMEDIARIES INC
4311 W El PRADO BLVD
TAMPA            FL     33629-8404
1-813-831-8889

**POLICY PERIOD FROM: MAR. 28 2016**
**TO: MAR. 28 2017**

at 12:01 A.M. Standard time at
the address of the insured as
stated herein.



**RETAINED LIMIT:**                    **$250**
**LIMIT OF LIABILITY:     $1,000,000**

**SCHEDULE OF UNDERLYING INSURANCE:**
You, as defined in the policy contract, agree:
  1) that insurance policies providing the coverages specified on the back of these declarations, if applicable,
     are in force and will be maintained in force as collectible insurance for at least the required minimum
     limits stated.
  2) to insure all motor vehicles owned, leased by or used by you.
  3) to insure all residence premises owned, leased by or leased to you.
  4) to insure all recreational vehicles owned, leased by or used by you.
  5) to insure all watercraft owned by you.

| COVERAGES | PREMIUM |
|---|---|
| Basic premium - includes one automobile and primary residence | $  221.00 |
| 2 Additional automobiles in the household | $  148.00 |
| 1 Watercraft - 50+ horsepower and less than 32 ft or sailboat 26-31 ft | $   20.00 |
| Uninsured Motorists - $1,000,000 Limit | $  285.00 |
| **TOTAL ANNUAL PREMIUM** | **$   674.00** |

**PLEASE SEE REVERSE**
ORIGINAL

**EXHIBIT**
B

**DATE PREPARED FEB. 14 2016**

P-1075/EP 3/14
G1

| Type of Policy | Required Minimum Limits | |
|---|---|---|
| Automobile/Motor Vehicle Liability (Including motor homes)   Uninsured Motorist | Bodily Injury and Property Damage | - 250,000 each person/<br>- 500,000 each occurrence<br>- 100,000 each occurrence |
| Comprehensive Personal Liability | Single Limit | - 300,000 each occurrence |
| Premises Liability | Single Limit | - 300,000 each occurrence |
| Motorcycle Liability | Single Limit or Bodily Injury and Property Damage | - 500,000 each occurrence<br><br>- 250,000 each person<br>- 500,000 each occurrence<br>- 100,000 each occurrence |
| Recreation Vehicle Liability | Single Limit or Bodily Injury and Property Damage | - 300,000 each occurrence<br><br>- 250,000 each person<br>- 500,000 each occurrence<br>- 100,000 each occurrence |
| Watercraft Liability<br>1. a. Powerboats 32 feet or more in length; or<br>   b. Sailing vessels (with or without auxiliary power) 26 feet or more in length<br>2. All other watercraft | Single Limit Single Limit or Bodily Injury and Property Damage | - 500,000 each occurrence<br>- 300,000 each occurrence<br><br>- 250,000 each person/<br>- 500,000 each occurrence<br>- 100,000 each occurrence |
| Incidental Farm Coverage | Single Limit | - 300,000 each occurrence |

1B6X



**Safeco Insurance.**™
A Liberty Mutual Company

# FLORIDA PERSONAL UMBRELLA POLICY

### SAFECO INSURANCE COMPANY OF AMERICA
#### Home Office: Safeco Plaza, Seattle, Washington 98185-0001

(A stock insurance company.)

## READY REFERENCE TO YOUR PERSONAL UMBRELLA POLICY

| | Beginning On Page |
|---|---|
| **INSURING AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **COVERAGES** | 3 |
|     Personal Liability | |
|     Defense Coverage | |
|     Supplementary Payments | |
| **EXCLUSIONS** | 3 |
| **CONDITIONS** | 7 |
|     Limit of Liability | |
|     Severability of Insurance | |
|     Duties After Loss | |
|     Appeals | |
|     Suit Against Us | |
|     Bankruptcy or Death | |
|     Payment of Loss | |
|     Other Insurance | |
|     Underlying Insurance Exhausted | |
|     Policy Period and Territory | |
|     Our Right to Recover Payment | |
|     Waiver or Change of Policy Provisions | |
|     Termination | |
|     Payment of Premium and Fees | |
|     Assignment | |
|     Conflicting Statutes | |
|     Maintenance of Underlying Insurance | |
|     Concealment or Fraud | |
|     Liberalization Clause | |



## INSURING AGREEMENT

We agree to provide the insurance described in this policy in return for the payment of all premiums and subject to the terms, conditions and limitations of this policy. The limit of our liability and the premiums are shown in the Declarations, which is a part of this policy.

## DEFINITIONS

1. Throughout this policy, "you" and "your" refer to the "named insured" shown in the Policy Declaration and the spouse if a resident of the same household.

2. "We", "us" and "our" refer to the underwriting Company as shown in the Declarations providing this insurance.

Other words and phrases are defined. They are in bold type when used:

3. "Bodily injury" means bodily harm, sickness or disease including resulting required care, loss of services and death.

4. "Business" means:

   a. a trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. any other activity engaged in for money or other compensation other than reimbursement for expenses incurred to perform the activity.

5. "Environmental exposure" means exposure to any of the following:

   a. asbestos or any material containing asbestos;

   b. electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

   c. lead or any materials containing lead; or

   d. radon or any other radioactive substances.

6. "Family member" means a person related to you by blood, marriage, or adoption whose principal place of residence is the same as yours. This includes a ward or foster child who is a resident of your household.

7. "Fungi" means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spores, scents or other substances, products or by-products produced, released by or arising out of fungi, including the growth, proliferation or spread of fungi or the current or past presence of fungi.

However, this definition does not include any fungi intended for consumption.

8. "Insured"

   a. means:

      (1) you;

      (2) any family member. But with respect to vehicles to which this policy applies, a family member is covered only as follows:

         (a) while using a vehicle owned by you or any family member and covered by this policy;



         (b) while using a vehicle not owned by you or any family member with the express or implied permission of the owner or other person having lawful possession and used for the purpose intended.

      (3) any person or organization using or having custody of animals owned by you and with your express or implied permission. However, a person or organization using or having custody of such animals in the course of any business or without your express or implied permission or beyond the purpose intended by the permission is not an insured.

   b. None of the following is an insured:

      (1) the owner or lessor of a vehicle or watercraft loaned to or hired by you or on your behalf;

      (2) any person while employed or engaged in the business of selling, maintaining, storing, parking or mooring vehicles or watercraft. Also, any person or organization (other than you) with respect to their liability for the acts or omissions of any such person;

      (3) any person or organization (other than you, a family member or your employees or agents) loading or unloading vehicles or watercraft;

**(4)** the owner, pilot, crew member, or any person operating any aircraft chartered with pilot by you or on your behalf;

**(5)** any aircraft or aircraft part manufacturer, sales or maintenance organization, airport or hangar operator, their employees or agents with respect to any **occurrence** arising out of such operations.

**(6)** any person or organization with respect to any vicarious liability for the acts or omissions of a person described in 8.a. above.

**9.** "**Occurrence**" means:

**a.** an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in:

**(1)** bodily injury; or

**(2)** property damage.

**b.** an offense, committed during the coverage period, which results in **personal injury**.

**10.** "**Personal injury**" means injury arising out of one or more of the following offenses:

**a.** false arrest, detention or imprisonment, or malicious prosecution;

**b.** libel, slander or defamation of character; or

**c.** invasion of privacy, wrongful eviction or wrongful entry.

**11.** "**Personal watercraft**" means jet skis, wet bikes or other craft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**12.** "**Pollutants or contaminants**" means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Chemicals include, but are not limited to, petroleum, petroleum derivatives, petroleum synthetics and farm chemicals. Waste includes materials to be recycled, reconditioned or reclaimed.

**13.** "**Property damage**" means physical injury or destruction of tangible property including loss of its use.

**14.** "**Punitive or exemplary damages**" include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for bodily injury, personal injury or property damage.

**15.** "**Residence premises**" means:

**a.** the one, two, three or four family dwelling used principally as a private residence;

**b.** other structures and grounds; or

**c.** that part of any other building;

where you reside and which is shown in the Declarations.

**16.** "**Retained limit**" means either:

**a.** the limit of liability specified in the Schedule of Underlying Insurance of the Declarations for each underlying policy, plus the limit of any other underlying insurance collectible by the **insured**; or

**b.** the amount shown under **retained limit** in the Declarations, as the result of an **occurrence** not covered by underlying policies of insurance.

**17.** "**Underlying insurance**" means insurance policies providing the **insured** with primary liability coverage meeting or exceeding the required minimum limits. The types of policies and the required minimum liability limits are listed in the policy Declarations.

**18. a.** "**Ultimate net loss**" means the amount paid or payable in settlement of the loss for which any **insured** is held liable by:

**(1)** court judgment; or

**(2)** compromise involving our written consent.

All recoveries and salvage collected will be deducted from this amount.

**b.** "**Ultimate net loss**" does not include:

**(1)** loss expense or legal expenses (such as attorney's fees and court costs);

**(2)** salaries of employees; or

**(3)** office expenses incurred by any **insured**, us, or any underlying carrier.

**19.** "**Vehicle**" means:

**a.** a private passenger land motor vehicle, trailer or semi-trailer:

**(1)** designed for use principally on public roads;

**(2)** while being used on public roads, if subject to the motor vehicle registration law or financial responsibility law of the state of principal garaging; or

(3) that is designed for recreational use off public roads;

b. farm tractors; or

c. trailers and implements while being towed by a vehicle identified in 19.a. or 19.b.

## COVERAGES

**PERSONAL LIABILITY**

We will pay the **ultimate net loss** in excess of the **retained limit** that the **insured** is legally responsible for because of covered **bodily injury, personal injury** or **property damage** caused by an **occurrence**.

**DEFENSE COVERAGE**

When a claim covered by this policy is made against any **insured**, and such claim is not covered by the **insured's underlying insurance** stated in the Declarations or by any other **underlying insurance** available to the **insured**, we will, subject to the **retained limits**, defend any suit against any **insured** even if it is groundless or fraudulent. And we will investigate, negotiate and settle on behalf of the **insured** any claim or suit as we deem appropriate.

**SUPPLEMENTARY PAYMENTS**

We will pay on behalf of an **insured**:

1. premiums for:

   a. bonds to release attachments;

   b. appeal bonds; and

   c. bail bonds;

   up to the limits of the policy. We will not apply for or furnish any such bonds.

2. our expenses;

3. costs taxed against any **insured** in any suit we defend;

4. interest accruing after entry of judgment until we have paid, tendered or deposited in court such part of the judgment which does not exceed our limit of liability;

5. reasonable expenses incurred by any **insured** at our request, including loss of earnings (but not loss of other income), up to $250 a day.

In any country where we are prevented from carrying out this agreement, we will pay any defense expense incurred with our written consent.

The **insured** shall promptly reimburse us for any amount of **ultimate net loss** paid on behalf of the **insured** within the **retained limit** of liability.

## EXCLUSIONS

This policy does not apply to any:

1. liability that is payable or must be provided for under a workers' compensation, occupational disease, unemployment compensation or disability benefits law;

2. **personal injury:**

   a. caused by or at the direction of an **insured** with the knowledge that the act would violate the rights of another and would inflict **personal injury;**

   b. arising out of oral or written publication of material, if done by or at the direction of an **insured** with knowledge of its falsity; or

   c. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

3. **bodily injury** or **property damage** arising out of any act or damage which is expected or intended by any **insured**, or which is the foreseeable result of an act or omission intended by any **insured**, which causes **bodily injury** or **property damage**.

This exclusion applies even if:

   a. such **bodily injury** or **property damage** is of a different kind or degree than expected or intended;

   b. such **bodily injury** or **property damage** is sustained by a different person, persons or property than expected or intended

This exclusion does not apply to **bodily injury** resulting from a reasonable action by any **insured** in preventing or eliminating danger in the operation of vehicles or aircraft or protecting persons or property.

4. **bodily injury** or **personal injury** to **you** or any **family member;**

5.  **bodily injury, personal injury or property damage:**

a.  arising out of the ownership, maintenance, use, operation, loading or unloading of:

   (1)  any aircraft, except aircraft chartered with crew by you or on your behalf.

   This exclusion does not apply to model aircraft not used or designed to carry people or cargo;

   (2)  any motorcycle, moped, motor scooter, motorized bicycle or similar vehicle:

      (a)  licensed for road use; or

      (b)  subject to the financial responsibility laws of the garaging state.

      (c)  Unless, with respect to 5.a.(2)(a) and 5.a.(2)(b), the motorcycle, moped, motor scooter, motorized bicycle or similar vehicle:

         i.  is covered by underlying insurance; and

         ii.  coverage is stated and a premium is charged on the Declarations of this policy; or

         iii.  notice is given to us within forty-five days after acquisition of any newly acquired motorcycle, moped, motor scooter, motorized bicycle or similar vehicle and an additional premium is charged.

      (d)  We will, however, cover bodily injury or property damage while any insured is operating a borrowed or rented motorcycle, moped, motor scooter, motorized bicycle or similar vehicle;

         i.  with the express or implied permission of the owner or other person having lawful possession and used for the purpose intended; and

         ii.  not furnished or available for the regular use of you or a family member or any other person who resides with you.

   (3)  any watercraft while away from premises owned by any insured if the watercraft is:

      (a)  powered by an inboard or inboard-outboard motor;

      (b)  a sailing vessel (with or without auxiliary power) of 26 feet or more in overall length;

      (c)  powered by one or more outboard motors with more than 25 total horsepower; or

      (d)  a personal watercraft.

      (e)  Unless, with respect to 5.a.(3)(a) through 5.a.(3)(d), above, the watercraft is covered by underlying insurance and:

         i.  coverage is stated and a premium is charged on the Declarations of this policy; or

         ii.  notice is given to us within forty-five days after acquisition of any newly acquired watercraft and an additional premium is charged.

      (f)  We will, however, cover any insured while operating a borrowed or rented watercraft regardless of size or horsepower with the express or implied permission of the owner or other person having lawful possession and used for the purpose intended.

   (4)  any hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

   (5)  any recreational vehicle.

   Recreational vehicle means a motorized:

      (a)  all-terrain vehicle;

      (b)  dune buggy;

      (c)  golf cart;

      (d)  snowmobile; or

      (e)  any other vehicle designed for recreational use off public roads other than described in 5.a.(2) above.

      (f)  Unless, with respect to 5.a.(5)(a) through 5.a.(5)(e) above, the recreational vehicle

is covered by underlying insurance and:

    I.    coverage is stated and a premium is charged on the Declarations of this policy; or

    II.    notice is given to us within forty-five days after acquisition of any newly acquired recreational vehicle and an additional premium is charged.

**(g)** We will, however, cover bodily injury or property damage while any insured is operating a borrowed or rented recreational vehicle:

    I.    with the express or implied permission of the owner or other person having lawful possession and used for the purpose intended; and

    II.    not furnished or available for the regular use of you or a family member or any other person who resides with you.

**b.** arising out of:

  **(1)** any **business pursuits** or **business property** of any **insured**, except for:

    **(a)** the business use of a private passenger automobile or owned watercraft, unless used as a public or livery conveyance.

    **(b)** the occasional or part-time self-employed **business** pursuits of any **insured** who is under 23 years of age.

  **(2)** the rendering of any professional service or the omission of such service by any **insured**.

**c.** arising out of the maintenance or use, including loading or unloading, of any non-owned **vehicle** regularly used or available for use by you or any **family member**, if the **vehicle** is not covered by **underlying insurance**.

**d.** arising out of any **insured's** participation in, or preparation or practice for any racing or speed contest or similar competition involving a motorized land **vehicle** or motorized watercraft including **personal watercraft**, regardless of whether such contest is spontaneous, prearranged or organized.

This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

**e.** arising out of any liability assumed by any **insured** under any contract or agreement except any indemnity obligation assumed by the **insured** under a written contract directly relating to the ownership, maintenance or use of the **residence premises**.

**f.** arising out of a written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

  **(1)** known or unknown property or structural defects;

  **(2)** known or hidden defects in plumbing, heating, air conditioning or electrical systems;

  **(3)** known or unknown soil conditions or drainage problems; or

  **(4)** concealment or misrepresentation of any known defects, including, but not limited to fungi, wet or dry rot, or bacteria.

**g.** which results from the legal liability of any **insured** because of home care services, day care or any hospice related activity to any person(s) on a regular basis by or at the direction of:

  **(1)** any **insured**;

  **(2)** any employee of any **insured**;

  **(3)** any other person(s) actually or apparently acting on behalf of any **insured**.

Regular basis means more than 20 hours per week.

This exclusion does not apply to:

  **(4)** home care services provided to the relatives of any **insured**;

  **(5)** occasional or part-time home care services provided by any **insured** under 23 years of age.

**h.** arising out of the transmission of a communicable disease by an **insured** whether the disease was known or unknown to the **insured** at the time of the transmission.

**i.** arising out of a criminal act or omission committed by or with the knowledge or consent of any **insured**, except those violations of a motor vehicle law.

**j.** arising out of sexual molestation, corporal punishment, illegal discrimination, sexual harassment or physical or mental abuse.

k. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana, phencyclidine (PCP), methamphetamines and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

l. sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any insured, except domestic employees in the course of their duties related to the maintenance of the residence premises.

m. sustained by any insured who is also covered under any nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted.

n. arising out of any act or omission of any insured as an officer or member of the board of directors of any corporation or organization. However, this exclusion (5.n.) does not apply if the corporation or organization is not-for-profit and the insured receives no compensation or allowance other than reimbursement of expenses.

o. arising directly or indirectly out of war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

p. arising, in whole or in part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of pollutants at any time. This includes any loss, cost or expense arising out of any:

(1) request, demand or order that any insured or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of pollutants;

(2) claim or suit or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or

in any way responding to, or assessing, the effects of pollutants.

This exclusion does not apply to bodily injury or personal injury sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

q. arising, in whole or in part, out of an actual, alleged, or threatened environmental exposure. This includes any loss, cost or expense arising out of any:

(1) request, demand or order that any insured or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of an actual, alleged, or threatened environmental exposure; or

(2) claim or suit or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of an actual, alleged, or threatened environmental exposure.

r. arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data.

6. assessments charged against you as a member of an association, corporation or community of property owners.

7. amounts payable under any:

a. automobile no-fault or any similar coverage; or

b. Uninsured Motorists or Underinsured Motorists coverage or any similar coverage, unless this policy is endorsed to provide such coverage as shown in the Declarations.

8. amounts payable under any Uninsured or Underinsured Watercraft Bodily Injury coverage.

9. property damage to:

a. property owned by any insured; or

b. aircraft rented to, used by or in the care of any insured; or

c. any property rented to, used or occupied by or in the care, custody or control of any insured except to the extent that we have agreed to provide insurance by special endorsement.

10. civic or public activities for which the insured receives compensation or allowance other than reimbursement of expenses.

11. **punitive or exemplary damages** awarded against any insured.

12. any liability arising directly or indirectly, in whole or in part, out of actual or alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungi, bacteria or other microbes.**

This exclusion includes:

a. the cost of testing for or monitoring of **fungi, bacteria or other microbes,** or tearing out or removal of property to facilitate testing or monitoring;

b. disclosure or failure to disclose, advise or failure to advise of **fungi, bacteria or other microbes,** or of conditions contributing to any ensuing **fungi, bacteria or other microbes;** or

c. any liability imposed upon any insured by any governmental authority.

13. **Personal injury, bodily injury or property damage** caused by any animal owned or kept by any insured whether or not the injury occurs on the **residence premises** or any other location, except if covered by an underlying policy listed in the Schedule of Underlying Insurance.

## CONDITIONS

1. **Limit of Liability.**

   Our total liability for all damages shall only be for the ultimate net loss in excess of the **insured's retained limit.** Regardless of the number of insureds, claims made or persons injured, our total liability for all damages resulting from any one **occurrence** shall not exceed the limit of liability stated in the Declarations.

   All **bodily injury, personal injury** and **property damage** resulting from any one **occurrence** or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one **occurrence.** There is no limit to the number of **occurrences** during the policy period for which claims may be made.

2. **Severability of Insurance.**

   This insurance applies separately to each **insured.**

   This condition shall not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.**

   a. In case of an **occurrence** likely to involve us, written notice shall be given as soon as practicable to us or any of our authorized agents. Such notice shall contain:

      (1) particulars sufficient to identify the **insured;**

      (2) reasonably obtainable information regarding the time, place and circumstances of the **occurrence** or injury;

      (3) the names and addresses of the claimants and available witnesses.

   b. If a claim is made or suit is brought against an **insured,** the **insured** shall immediately notify us in writing. Also, forward to the underlying insurers and to us every demand, summons or other process received by the **insured.**

   c. The **insured** shall cooperate with the underlying insurers as required by the terms of the **underlying insurance.** The **insured** shall cooperate with us and, upon our request, assist in:

      (1) making settlements;

      (2) conducting of suits;

      (3) enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of loss covered by this policy or the **underlying insurance;**

      (4) attending hearings and trials;

      (5) securing and giving evidence; and

      (6) obtaining the attendance of witnesses.

4. **Appeals.**

   If the **insured** or any insurer providing **underlying insurance** elects not to appeal a judgment which exceeds the **retained limit,** we may do so at our own expense. We will pay all costs, taxes, expenses and interest related to our appeal. The amounts we pay with respect to an appeal will be in addition to our limit of liability.

5. **Suit Against Us.**

   a. No action shall be brought against us unless there has been compliance with the policy provisions.

   b. No person or organization shall have any right under this policy to join us as a party to any action against any insured.

   c. No action shall be brought against us until the obligation of the Insured has been determined by final judgment or agreement signed by us.

6. **Bankruptcy or Death.**

   Your bankruptcy or insolvency shall not relieve us of any of our obligations under this policy. If you die or become bankrupt or insolvent within the policy period, this policy, unless canceled, shall cover your legal representative for the unexpired term.

7. **Payment of Loss.**

   The Insured may pay the amount of ultimate net loss to the claimant with our written consent to effect settlement and, upon submission of proof, we shall indemnify the Insured for that part of such payment which is in excess of the retained limit. Or, we will, upon the Insured's request, make such payment to the claimant on the Insured's behalf.

8. **Other Insurance.**

   The coverage afforded by this policy is excess over any other insurance available to an Insured, except insurance written specifically to be excess over this policy.

   Nothing shall make this policy subject to the terms, conditions, and limitations of such other insurance.

9. **Underlying Insurance Exhausted.**

   If the limits of liability on any underlying insurance are exhausted by any occurrence, we will assume charge of the settlement or defense of any claim against the Insured resulting from the same occurrence. The provisions of Defense Coverage shall apply.

10. **Policy Period and Territory.**

    This policy applies to occurrences happening anywhere during the policy period which is stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

11. **Our Right to Recover Payment.**

    If we make a payment under this policy, we are entitled to exercise the Insured's rights of recovery against any person liable for the loss. The Insured must do nothing after loss to prejudice those rights.

12. **Waiver or Change of Policy Provisions.**

    A waiver or change of any provision of this policy must be in writing by us to be valid.

13. **Termination.**

    This policy may be canceled as follows:

    a. You may cancel by:

       (1) returning this policy to us; or

       (2) giving us advance written notice of the date cancellation is to take effect.

       We will return the prorated unused share of your premium.

    b. We may cancel:

       (1) for nonpayment of premium, whether payable to us or to our agent or under any finance or credit plan, by mailing at least 20 days in advance a notice to you at the address shown in this policy; or

       (2) if there has been a material misstatement, failure to comply with underwriting requirements established by us within 90 days of policy inception, or a substantial change in the risk covered by the policy. This can be done by notifying you at least 45 days before the date cancellation takes effect.

    c. We may elect not to renew this policy. We may do so by mailing at least 45 days in advance, a notice to you at the address shown in this policy, indicating the expiration date of this policy.

    d. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

14. **Payment of Premium and Fees.**

    If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

Any action by us to present the remittance for payment more than once shall not affect our right to void this policy.

15. **Assignment.**

Assignment of this policy shall not be valid unless we give our written consent.

16. **Conflicting Statutes.**

If any of the terms of this policy should conflict with state or local law, the **insured** can enforce them as if the terms had been changed to conform.

17. **Maintenance of Underlying Insurance.**

Each policy, when applicable, as specified in the Schedule of Underlying Insurance of the Declarations, shall be maintained in full effect, without alteration, during the policy period, except for any reduction of the aggregate limit or limits due to payment of claims with respect to occurrences that take place during the policy period.

If you fail to do so, this policy will not be invalid, but we shall only be liable to the extent that we would have been had you complied with this condition.

If there is no recovery available to you as a result of insolvency of the underlying insurer or by reason of your having breached the contract of underlying insurance, the coverage of this policy shall apply in excess of the applicable limit of liability specified in the Schedule of Underlying Insurance of the Declarations.

18. **Concealment or Fraud.**

This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or any time during the policy period.

We may void this policy or deny coverage for a loss or **occurrence** if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or **occurrence**. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

19. **Liberalization Clause.**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

This liberalization clause does not apply to changes implemented in the **underlying insurance**.



**PERSONAL UMBRELLA**
**EXCESS UNINSURED MOTORISTS COVERAGE**

For an additional premium, it is agreed the policy is amended as follows. Modifications, amendments, or additions by this endorsement apply only to the **Excess Uninsured Motorists Coverage** provided by this endorsement and no other coverages afforded by the policy. Unless modified or amended by this endorsement, the provisions of the policy apply to this coverage.

**DEFINITIONS:**

As used in this endorsement:

1.  **"Uninsured Motor Vehicle"** means a land motor vehicle or trailer:

    a.  for which no **bodily injury** liability bond or policy applies at the time of the accident, or for which a liability bond or policy applies but the amount payable under that bond or policy to an **insured** is less than the limit of liability for **Uninsured Motorists Coverage** applicable to the **insured** under this policy plus the limit of liability for **Uninsured Motorists Coverage** applicable to the **insured** under any other policy;

    b.  whose operator or owner cannot be identified and which causes an accident resulting in **bodily injury** to you or any family member. If there is no physical contact by the vehicle the facts of the accident must be corroborated by an eyewitness to the accident, other than the **insured** making the claim;

    c.  for which a liability bond or policy applies at the time of the accident, but the bonding or insuring company denies coverage or is or becomes, insolvent.

    **Uninsured Motor Vehicle** does not include any vehicle operated on rails or crawler treads, designed mainly for use off public roads while not on public roads, or while located for use as a residence or premises.

2.  **"Covered motor vehicle"** means a land motor vehicle:

    a.  owned by you and covered under this policy; or

    b.  you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its breakdown, repair, servicing, loss or destruction.

For purposes of this endorsement any private passenger type **vehicle** leased under a written agreement to any person for a continuous period of at least six months shall be considered owned by that person.

**COVERAGES**

The COVERAGES Section is amended by adding the following:

**EXCESS UNINSURED MOTORISTS COVERAGE**

We will pay damages resulting from **bodily injury** sustained by an **insured** which are in excess of the Required Minimum Limits for Automobile/Motor Vehicle Liability or Motorcycle Liability shown in the Declarations plus the limit of any other insurance collectible by the **insured** which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle, provided**:

1.  there is **Uninsured Motorists Coverage** in effect at the time of loss for each underlying motor vehicle policy and the limit of liability for such coverage on each policy is at least equal to the Required Minimum Limits for Automobile/Motor Vehicle Liability or Motorcycle Liability;

2.  our liability shall be excess of the Required Minimum Limits for Automobile/Motor Vehicle Liability or Motorcycle Liability; and

3.  **Excess Uninsured Motorists Coverage** under this endorsement shall apply in accordance with the terms and conditions of the underlying insurance in effect at the time of the loss.

**EXCLUSIONS**

The following are added:

13. loss occurring at any time during which you do not maintain **Uninsured Motorists Coverage** for each underlying insurance policy with the limit of liability equal to or in excess of the Required Minimum Limits for Automobile/Motor Vehicle Liability or Motorcycle Liability.

14. loss which is not covered or collectible for any reason under the **Uninsured Motorists Coverage** of the underlying insurance policy.

15. **bodily injury** sustained by any person if that person or the legal representative settles the **bodily injury** claim without our consent.

However, this exclusion does not apply:

   a.  if such settlement does not prejudice our right to recover payment; or

   b.  to a settlement made with the insurer of a **vehicle** described in section **1.a.** of the definition of **uninsured motor vehicle.**

16. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   a.  workers compensation law; or

   b.  disability benefits law.

## CONDITIONS

Additional conditions applicable to coverage provided by this endorsement:

### Limit of Liability.

The Limit of Liability section is amended by adding the following:

The limit of liability shown in the Declarations for **Excess Uninsured Motorists Coverage is** our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. This is the most we will pay regardless of the number of **insureds**, claims made, persons injured, **covered motor vehicles**, or premiums shown in the Declarations, or motor vehicles involved in the accident.

In no event shall the limit of liability for two or more **covered motor vehicles** or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

The following is added to item 3. **Duties After Loss:**

A person seeking **Excess Uninsured Motorists Coverage** must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing by certified or registered mail of a tentative settlement between the **insured** and the insurer of the **uninsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **uninsured motor vehicle.**

Item 8. **Other Insurance** is deleted and replaced by the following:

8.  **Other Insurance**

   If there is other applicable umbrella or excess Uninsured Motorists Insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an umbrella or excess basis. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible umbrella or excess Uninsured Motorists Insurance that applies to the non-owned vehicle.

With respect to **Excess Uninsured Motorists Coverage** only, the following is added:

### Arbitration.

1. If we and an **insured** do not agree:

   a.  whether that person is legally entitled to recover damages under this coverage; or

   b.  as to the amount of damages;

   then the matter may be arbitrated. However, both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

2. Each party will:

   a.  pay the expenses it incurs; and

   b.  bear the expenses of the third arbitrator equally.

3. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

    a. whether the **insured** is legally entitled to recover damages; and

    b. the amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your **covered motor vehicle** is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

4. If we and an **insured** agree to arbitration, the Florida Arbitration Code will not apply.






This policy has been signed by our President and Secretary.



Timothy M. Sweeney
President



Dexter Legg
Vice President and Secretary

This policy includes copyrighted material of Insurance
Services Office, Inc. with its permission.

P-1057/FLEP 3/09
G2

## POLICYHOLDER NOTICE
### (Florida Hurricane Catastrophe Fund Assessment)

Florida law requires licensed insurers that write certain lines of business in the state to collect the Florida Hurricane Catastrophe Fund (FHCF) assessment from their policyholders and pay it to the FHCF.

The assessment is given in full to the Florida Hurricane Catastrophe Fund and no compensation or benefit is provided to the agent or insurer.

If this assessment applies to your policy, the term "FHCF Assessment", along with the indicated dollar amount, will be displayed on your policy's Declarations Page.

Please contact your Independent Agent if you have any questions regarding this assessment or your policy.

SA-2704/EP 8/06






## AFFIDAVIT OF LIABILITY COVERAGES

**STATE OF FLORIDA**

**COUNTY OF HILLSBOROUGH**

My name is Adrianna Valdez, I am over the age of eighteen (18), have personal knowledge of the matters set forth herein and am otherwise legally competent. After being duly sworn, I hereby depose and state as follows:

1. I am the Claim Manager, responsible for disclosing coverage on behalf of Direct General Insurance Company. Direct General Insurance Company has issued policy number FLAD128325016 in the State of Florida, which does or may provide liability coverages for a motor vehicle accident which occurred on May 18, 2016.

2. The name of each insured relative to the subject loss is: Christine Johnson.

3. The limits of liability coverage are:

    a.   Bodily Injury:         N/A per person, N/A per accident;
    b.   Property Damage:    $ 10,000 per accident

4. A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement: None at this time.

5. I have attached a copy of the referenced policy, which I certify to be true and accurate.

6. Direct General Insurance Company is unaware of any other liability insurance, including excess or umbrella coverage for the above insured(s).

7. Direct General Insurance Company has also forwarded your request pertaining to this information to Christine Johnson asking that she please advise of the name and coverage of any other insurers pursuant to Florida Statutes §627.4137 and to forward your request for information to all other affected insurers.

8. I solemnly swear and affirm that the above is true and correct to the best of my knowledge.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Adrianna Valdez

SWORN TO AND SUBSCRIBED before me personally appeared Adrianna Valdez and who executed the foregoing Affidavit on his or her own behalf and acknowledged to me that they voluntarily executed same on this the 19ᵗʰ day of August, 2016.

_____
Notary Public

My Commission Expires: June 21, 2017

Claim number:   16-02029540
ABV/clw

**EXHIBIT**
C

NANNETTE WILSON
Notary Public · State of Florida
My Comm. Expires Jun 21, 2017
Commission # FF 026312
Bonded Through National Notary Assn.